MARCELLA D. BORKOWSKI, ADMINISTRATRIX (ESTATE OF ANTHONY BORKOWSKI), ET AL.
*v.* CHANDRA K. SACHETI
(14181)

Dupont, C. J., and O'Connell and Healey, Js.

Argued April 2—officially released October 1, 1996

*James H. Howard,* with whom on the brief, was *David R. Kritzman,* for the appellant (plaintiff).

*Denise Martino Phelan,* with whom were *Andrew J. O'Keefe* and, on the brief, *Maureen Sullivan Dinnan,* for the appellee (defendant).

HEALEY, J. The plaintiff appeals from the judgment for the defendant, after a jury trial, in this medical malpractice action. The action was brought by Marcella D. Borkowski as administratrix of the estate of her deceased husband Anthony Borkowski (decedent) against the defendant, Chandra K. Sacheti, a cardiologist. The amended complaint is in three counts with both the first and second counts alleging in part that this is a "negligence action and statutory action [brought] pursuant to Conn. Gen. Stat. § 52-555."[1] The third count was brought by the plaintiff individually and sought

---

[1] General Statutes § 52-555, entitled "Actions for injuries resulting in death," provides in relevant part: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses . . . ."

damages for loss of consortium.[2] The first count alleges that the decedent's wrongful death was caused by the malpractice of the defendant, his agents or employees.[3] The second count alleges that the negligence of the defendant, his agents or employees caused the decedent to suffer "a lost or decreased chance of survival." We hereafter refer to the second count as the plaintiff's "loss of chance" claim. The trial court submitted the first and third counts[4] to the jury, which returned a verdict for the defendant on each of those counts.[5] It declined to submit the second count to the jury, opining that there is no cognizable cause of action in Connecticut for recovery on the "loss of chance" theory alleged in that second count. Later, the trial court denied the plaintiff's motions to set aside the verdict and for a new trial. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly (1) refused to charge the jury on the second count, which sought compensation for a "lost or decreased chance" of survival, (2) permitted the defendant to introduce evidence of contributory negligence

[2] The plaintiff has stated in her brief that "[t]he third count is not relevant to this appeal." Accordingly, we do not discuss it.

[3] The "agents or employees" of the defendant referred to certain persons employed by him in his office, specifically those who handled telephone calls to his office.

[4] The amended complaint, which contained three counts, was not sent into the jury room. The trial court, during its instructions to the jury, reviewed the allegations of the first and third counts. In doing so, it did not make reference to counts. During jury deliberations the jury sent out a note asking, "If we are allowed, is it possible to receive the complaint?" The trial judge told the jury that it was his practice, and of most judges, to read the complaint to them as he had done and not to send it into the jury room. He then proceeded to read the allegations of the amended complaint, essentially as he had done earlier.

[5] The verdict that the jury returned, which was dated and signed by the foreperson, was, in relevant part, the following: "In this case, the jury finds the issues for the Defendant, Chandra K. Sacheti, M.D., as against the plaintiff, Marcella Borkowski, individually, and as Administratrix of the Estate of Anthony Borkowski."

when contributory negligence had not been pleaded and (3) refused to charge the jury that the decedent had exercised reasonable care in attending to his health care needs.

In order to put what follows into context, we set out certain facts that the jury could reasonably have found. The decedent died on October 24, 1987, after suffering a myocardial infarction and being admitted to Rockville General Hospital. The decedent was forty-seven years of age at that time and had a history of heart problems. On August 6, 1985, he had sustained a myocardial infarction and the subsequent diagnosis was that of chronic stable angina pectoris. He was under the care of the defendant from 1985 until some time in 1987. During that period, he was treated with medication. The decedent was employed as the business manager at Manchester Community College. He was married and had one son about twelve years of age.

The last time prior to the decedent's going to Rockville General Hospital on October 22, 1987, that the defendant had seen or spoken to him was on April 30, 1987. On that occasion, the defendant had examined him during a scheduled office visit. The decedent had also undergone a stress test in that office on that date. At that time, the defendant told him that this stress test was "more significant" than his September, 1985 stress test, commenting that this latest stress test was "abnormal." The defendant discussed the matter with him on April 30, 1987, and told the decedent that it was his feeling that the decedent should have an angiogram and that when he came in for his next scheduled visit "we will schedule the angiogram." The defendant told the decedent: "[Y]ou really need a cardiac [catheterization], think it over."

The decedent's next scheduled visit was set for June 24, 1987. He did not appear at the defendant's office

on June 24, 1987, nor did he contact that office concerning that appointment. In keeping with established office policy regarding a "no show" appointment, an attempt to contact the no show by telephone was presumably made and was followed two weeks later by an appointment card. On Sunday, October 18, 1987, the decedent told the plaintiff that, while taking his usual walk that day, he felt some shortness of breath and was not feeling well. He did not call the defendant's office that day. The decedent did not come to the office nor did he contact the defendant's office until October 19, 1987. The decedent was on vacation during the week of October 19, 1987. The plaintiff was at home recuperating from gall bladder surgery.

At this point, we refer to certain circumstances claimed by the plaintiff as surrounding the telephone calls the decedent allegedly made to the defendant's office starting on October 19, 1987, all of which the defendant vigorously denied ever took place. Those circumstances include the following claims of the plaintiff. On Monday, October 19, 1987, the decedent dressed, ate and drove his son to school. The plaintiff claimed that on that day the decedent called the defendant's office,[6] spoke to one of the defendant's employees and complained of his shortness of breath during his walk on October 18 and that an appointment was then made for Monday, October 26, 1987. On Tuesday, October 20, 1987, he got up, prepared and ate his breakfast and drove his son to school. He did not complain to anyone that day that he was having any problems. On Wednesday, October 21, 1987, the decedent got up, drove his son to school and then drove the plaintiff to her medical

---

[6] It was seriously disputed at the trial whether the decedent called the defendant's office and spoke to one of the defendant's employees on Monday, October 19, 1987, or on Wednesday, October 21, 1987. The plaintiff does not make any claim that the decedent spoke to the defendant on either of those dates.

appointment. He told the plaintiff that he "was feeling anxious" and she suggested that he try to have his October 26 appointment moved up. The plaintiff claimed that the decedent called the defendant's office and asked that his appointment be moved up. In doing so, he did not ask to speak to the defendant. On October 21, his appointment of October 26 was moved up to Friday, October 23.

Chronologically, we now come to further events disclosed by the evidence. On Thursday, October 22, 1987, the decedent got up and drove his son to school. He was home until leaving sometime between 4 and 5 p.m. to do some errands for the plaintiff and to buy some batteries for his son. While he was out he encountered a friend and made tentative arrangements for that evening to go to that friend's house, some thirty minutes from his home, to watch a World Series game. Upon arriving home at about 7 p.m., he complained of a bad headache and, between 7:30 and 8 p.m., he called the defendant's office. The defendant's answering service answered the call. Shortly thereafter, the physician who was covering for the defendant at that time telephoned the decedent. The decedent told the physician that he had chest pain radiating into his left arm. The physician advised him to go to the emergency room at Rockville General Hospital. After taking a shower, the decedent went by ambulance to a hospital where he was admitted at 8:58 p.m. An electrocardiogram taken at that time showed that he had not had a heart attack, and he was started on thrombolytic treatment. At 10:40 p.m., however, about one and one-half hours after his admission, the decedent suffered cardiac arrest. He was successfully revived and remained in the hospital. On Saturday, October 24, 1987, the decedent again suffered cardiac arrest and died.

I

We first address the plaintiff's claim that the trial court improperly refused to charge the jury on the sec-

ond count of her amended complaint, which sought compensation for a lost or decreased chance of the survival of the decedent. In doing so, she points out that the trial court refused to give her requested charge on the lost chance doctrine, maintaining that the trial court said that the doctrine was not a recognized cause of action in Connecticut.

The plaintiff argues that the lost chance doctrine is recognized in Connecticut and she points to *LaBieniec* v. *Baker*, 11 Conn. App. 199, 526 A.2d 1341 (1987), which she claims this court recognized such a cause of action. The defendant, while acknowledging in his brief that *LaBieniec* "did not relax the established standards for proximate cause," nevertheless, argued before us that the attorneys who briefed *LaBieniec* in this court had not addressed Professor Joseph H. King's widely cited Yale Law Journal article. J. King, "Causation, Valuation, and Chance in Personal Injury Torts Involving Pre-existing Conditions and Future Consequences," 90 Yale L.J. 1353 (1981).[7] Had that been done, he argues, the "fundamental understanding" of what this cause of action entails would have demonstrated that "fundamentally in order to recognize this cause of action [one] would have to get into an alternative to the traditional rule of proximate cause." We note that, while instructive, Professor King's article does advocate an approach that was not adopted by the *LaBieniec* court.

In recent years, a growing line of cases, generally termed "loss of a chance" cases, has put a strain on the

[7] In setting out the foundation of his article, Professor King stated: "It is the thesis of this article that the loss of a chance of achieving a favorable outcome or of avoiding an adverse consequence should be compensable and should be valued appropriately, rather than treated as an all-or-nothing proposition. Preexisting conditions must, of course, be taken into account in valuing the interest destroyed. When those preexisting conditions have not absolutely preordained an adverse outcome, however, the chance of avoiding it should be appropriately compensated even if that chance is not better than even." J. King, supra, 90 Yale L.J. 1354.

traditional causation analysis in medical malpractice cases. See comment, "Proving Causation in 'Loss of a Chance' Cases; A Proportional Approach," 34 Cath. U.L. Rev. 747 (1985). "In a loss of chance case, a tortfeasor, through his negligence, causes an individual to lose a chance to avoid some form of physical harm." Id., 749; *Gooding* v. *University Hospital Building, Inc.*, 445 So. 2d 1015 (Fla. 1984) (loss of chance to survive ruptured abdominal aortic aneurysm); see, e.g., *Cooper* v. *Sisters of Charity of Cincinnati, Inc.*, 27 Ohio St. 2d 242, 272 N.E.2d 97 (1971) (loss of chance to live). The traditional standard of the sufficiency of the evidence for submitting a medical malpractice case to the jury has required a plaintiff to adduce evidence of a reasonable medical probability that his injuries were proximately caused by the negligence of one or more of the defendants. This meant demonstrating that it is more likely than not that the injury, harm or condition claimed to have resulted from that negligence, was a substantial factor in causing the injury, harm or condition and without which that injury, harm or condition would not have occurred. See *Connellan* v. *Coffey*, 122 Conn. 136, 187 A.2d 901 (1936); *Gooding* v. *University Hospital Building, Inc.*, supra, 1015; *Cooper* v. *Sisters of Charity of Cincinnati, Inc.*, supra, 242. Where a preexisting condition is involved, a loss of chance plaintiff, in order to meet the traditional standard of causation, must prove that the victim of the alleged negligence probably would have survived had he been treated properly. If, however, the victim probably would not have survived, the cause of his death, if he died, would not have been the defendant's alleged negligence, but the preexisting condition. So, to satisfy this traditional standard, the plaintiff must prove that prior to the defendant's alleged negligence, the victim had a chance of survival of at least 51 percent.

In recent years, a number of states have sought to mitigate this result of the traditional causation standard

by adopting some version of the loss of chance doctrine. This doctrine has been the subject of much debate among courts and commentators. Generally speaking, courts have adopted three approaches[8] in addressing this doctrine: (1) the relaxed causation approach, (2) the proportional approach, and (3) the traditional approach. As will be seen, the true loss of chance theory is essentially one of adopting a standard of causation that departs from the traditional standard applied in negligence cases. *Delaney* v. *Cade*, 255 Kan. 199, 204, 873 P.2d 175 (1994).

The relaxed causation approach, commonly referred to as the substantial chance approach, has been explained by one court that adopted it as follows: "[T]he loss of chance theory is, essentially, one that allows an injured plaintiff to recover damages based upon a reduced standard of causation rather than the traditional one which requires the plaintiff to prove that it is more probable than not that the damage suffered was caused by the negligence of the defendant. . . . [The relaxed causation approach] requires plaintiff to present evidence that a substantial or significant chance of survival or better recovery was lost. If plaintiff meets this initial threshold, the causation issue is submitted to the jury, using the traditional proximate cause standard to ascertain whether, in fact, the alleged malpractice resulted in the loss of a substantial or significant chance. Thus, the jury must find by a preponderance

---

[8] We use this formulation of approaches, recognizing that in doing so, where other courts stand on this matter is not always totally clear. We agree with the Maryland Court of Appeals, which said, "Loss of chance medical malpractice actions have been recognized in several other jurisdictions, but the cases do not always clearly state the basis for recognizing the cause of action. A number of jurisdictions have adopted the loss of chance doctrine, while others have not clearly resolved whether to recognize the doctrine. Still other jurisdictions have refused to recognize the loss of chance doctrine." *Fennell* v. *Southern Maryland Hospital Center, Inc.*, 320 Md. 776, 781–82, 580 A.2d 206 (1990).

of the evidence that the alleged negligence was the proximate cause of the lost chance, but the lost chance itself need only be a substantial or significant chance, for a better result, absent any malpractice, rather than a greater than 50 percent chance of a better result." (Citations omitted; internal quotation marks omitted.) Id., 211–12. In effect, the relaxed causation approach loosens the traditional standard of evidentiary sufficiency, permitting the causation to be resolved by the fact finders and it requires submission of such a case to the fact finder even though there is no evidence of reasonable probability that the defendant's negligence caused the plaintiff's injury, harm or condition. See also *Herkovits* v. *Group Health Co-Op*, 99 Wash. 2d 609, 614, 664 P.2d 474 (1983); see note, "Recovery for Loss of Chance in a Wrongful Death Action—*Herkovits v. Group Health*, 99 Wash. 2d 609, 664 P.2d 474 (1983)," 59 Wash. L. Rev. 981 (1984). This relaxed causation approach has even been used to allow a death case to go to a jury where the court said that "if a defendant physician, by action or inaction, has destroyed any substantial possibility of the patient's survival, such conduct becomes a proximate cause of the patient's death." *Brown* v. *Koulizakis*, 229 Va. 524, 532, 331 S.E.2d 440 (1985); see *Hicks* v. *United States*, 368 F.2d 626, 632 (4th Cir. 1966); *McKellips* v. *Saint Francis Hospital, Inc.*, 741 P.2d 467, 472 (Okla. 1987). A number of other courts have essentially adopted the relaxed causation approach.[9]

The second or "proportional" approach encompasses a somewhat different focus on the issue of compensat-

---

[9] Some of these courts include: *McBride* v. *United States*, 462 F.2d 72 (9th Cir. 1972); *Jeanes* v. *Milner*, 428 F.2d 598 (8th Cir. 1970); *Thompson* v. *Sun City Community Hospital, Inc.*, 141 Ariz. 597, 688 P.2d 605 (1984); *Blackmon* v. *Langley*, 293 Ark. 286, 737 S.W.2d 455 (1987); *Perez* v. *Las Vegas Medical Center*, 107 Nev. 1, 805 P.2d 589 (1991); *Hamil* v. *Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978); *Thornton* v. *Charlestown Area Medical Center*, 172 W. Va. 360, 305 S.E.2d 316 (1983).

ing loss of chance. One commentator has explicated its rationale as follows: "The current causation approach requires the finder of fact to determine whether the decedent's chances to live or to achieve a more favorable result were more probable than not. Once the evidence shows that a probability did or did not exist, the inquiry ends. As a result, chances of less than fifty-one percent are treated as if they were nonexistent. A more sensible approach would be to redefine the victim's injury as the loss of a chance. Instead of attempting to determine whether the physical harm was caused by negligence, a court could examine the extent of the victim's lost chances for cure or improvement and grant a recovery that mirrors the extent of those chances. When viewing the question in the negligence setting, the harm suffered would be the loss of the chance. The relevant inquiry would be whether the defendant 'probably' caused a reduction in the victim's chances. If causation were found, the court would provide compensation for the lost chance in direct proportion to the extent of the lost chance." Comment, supra, 34 Cath. U.L. Rev. 766–67. The background of this approach is in Professor King's influential article in the Yale Law Journal. This approach conceptualizes the loss of chance of survival or improved health as a separate cause of action meriting recovery by way of compensation. In advancing his theory, Professor King not only maintains that the "failure [of courts] to distinguish between the functions of causation and valuation, or to identify and value rationally the true interests lost, has created a serious gap in the remedial structure" but also that "the loss of a chance of achieving a favorable outcome or of avoiding an adverse consequence should be compensable and should be valued appropriately, rather than treated as an all-or-nothing proposition." J. King, supra, 90 Yale L.J. 1354. In advocating that loss of chance has value entitling a plaintiff to compensation,

Professor King offers an illustration: "[C]onsider a patient who suffers a heart attack and dies as a result. Assume that the defendant-physician negligently misdiagnosed the patient's condition, but that the patient would have had only a 40 [percent] chance of survival even with a timely diagnosis and proper care. Regardless of whether it could be said that the defendant caused the decedent's death, he caused the loss of a chance, and that chance-interest [would] be completely redressed in its own right." J. King, supra, 90 Yale L.J. 1382. Professor King stresses the need to appreciate the difference between causation and valuation involving preexisting conditions. In the tort context he argues that "[c]ausation questions relate to the fact of a loss or of its source" and that "[v]aluation is the process of identifying and measuring the loss that was caused by the tortious conduct." Id., 1353–54. He maintains that "[t]he response of the courts to questions of causation and valuation involving preexisting conditions and claims for future consequences has been largely unsatisfactory." Id., 1354. He opines that the interest embodied in "a chance of avoiding some adverse result or of achieving some favorable result is a compensable interest in its own right." Id. The loss of such a chance in a personal injury case involving a preexisting condition merits compensation because, but for the negligence of the defendant, the plaintiff would have attained a better result or avoided an adverse consequence. He argues that, as to causation, courts apply the traditional reasonable medical probability test, but that, in recognizing a chance as compensable in its own right, unless the preexisting conditions of the plaintiff "have not absolutely preordained an adverse outcome, [then] the chance of avoiding it should be appropriately compensated even if that chance is not better than even." Id. He notes that "[u]nder the traditional standard of proof, there is no recovery for loss of a not-better-than even

chance of avoiding some partial loss." Id., 1374.[10] He also points out, however, that "[u]nder the prevailing all-or-nothing rule, most courts probably would value the better-than-even chance as though it had materialized or were certain to do so. They would not, in other words, treat such a chance as a chance at all, but as a certainty." Id., 1387.[11]

A number of courts and commentators have subscribed to Professor King's approach.[12] Professor King's analysis has received both support and criticism from commentators. See, e.g., comment, supra, 34 Cath. U.L. Rev. 747; comment, "Increased Risk of Harm: A New Standard for Sufficiency of Evidence of Causation in Medical Malpractice Cases," 65 B.U.L. Rev. 275, 304–305 (1985); note, "Loss of Chance As Technique: Toeing the Line at Fifty Percent," 72 Tex. L. Rev. 369 (1993); note, supra, 59 Wash. L. Rev. 981; M. McMahon, annot., 81 A.L.R.4th 485 (1990), "Medical Malpractice: Measure and Elements of Damages in Actions Based on Loss of Chance."

There is a third or "traditional approach" to the doctrine of lost chance. Those courts, that apply this approach maintain that the better rule is to require that the plaintiff in a medical malpractice action comport with the standard of proof of proximate cause and prove that the defendant's negligence, in probability, proximately caused the injury or death. What one court has

---

[10] For this proposition, King cites *Grody* v. *Tulin*, 170 Conn. 443, 450–51, 365 A.2d 1076 (1976) (must appear reasonably probable that but for alleged failure to perform timely surgery, patient's life would have been prolonged). J. King, supra, 90 Yale L.J. 1374 n.71.

[11] This suggests the elusiveness of labels such as "loss of chance" in a case where there is evidence of a better than even chance.

[12] For some courts supporting his pure loss of chance approach, see, e.g., *DeBurkarte* v. *Louvar*, 393 N.W.2d 131, 137 (Iowa 1986); *Falcon* v. *Memorial Hospital*, 436 Mich. 443, 470, 462 N.W.2d 44 (1990); *Perez* v. *Las Vegas Medical Center*, supra, 107 Nev. 1.

said is "[p]erhaps the most rigid position"[13] on this approach is expressed by the Ohio Supreme Court in *Cooper* v. *Sisters of Charity of Cincinnati, Inc.*, supra, 27 Ohio St. 2d 242. In *Cooper*, the plaintiff's minor son was in a bicycle-truck collision. Improper emergency room procedures failed to disclose a major head injury of the boy, and he was released and died the next morning. Id. One medical expert testified that although there was "near certainty of death" when an injury such as that sustained by this child went untreated, he refused to speculate on the degree of chance of survival with proper treatment. Id. Another medical expert placed the boy's chance of survival at "maybe . . . around [50 percent]."[14] Id., 247. In affirming the trial court's directed verdict for the defendants, the Ohio Supreme Court stated: "A rule, which would permit a plaintiff to establish a jury question on the issue of proximate cause upon a showing of a 'substantial possibility' of survival, in our judgment, suffers the same infirmity as a rule which would permit proof of a 'chance of recovery' to be sufficient. While the substantial possibility concept appears to connote a weightier burden than the chance of recovery idea, both derogate well-established and valuable proximate cause considerations. Traditional proximate cause standards require that the trier of the facts, at a minimum, must be provided with evidence that a result was more likely than not to have been caused by an act, in the absence of any intervening cause." Id., 251; see also *Gooding* v. *University Hospital Building, Inc.*, supra, 445 So. 2d 1015.

---

[13] *Roberson* v. *Counselman*, 235 Kan. 1006, 1018, 686 P.2d 149 (1984).

[14] In *Cooper* v. *Sisters of Charity of Cincinnati, Inc.*, supra, 27 Ohio St. 2d 253, the Ohio Supreme Court stated: "Probability is most often defined as that which is more likely, than not. . . . Maybe . . . around 50 [percent], in our judgment does not provide a basis from which probability can reasonably be inferred. The use of the words, 'maybe' and 'around,' does not connote that there is probability; those words, in context used, could mean either more than 50 [percent], or less than 50 [percent]. Probable is more than 50 [percent] of actual." (Citations omitted; internal quotation marks omitted.)

Underscoring this position, the *Cooper* court then stated: "In an action for wrongful death, where medical malpractice is alleged as the proximate cause of death, and plaintiff's evidence indicates that a failure to diagnose the injury prevented the patient from an opportunity to be operated on, which failure eliminated any chance of the patient's survival, the issue of proximate cause can be submitted to a jury only if there is sufficient evidence showing that with proper diagnosis, treatment and surgery the patient probably would have survived." *Cooper* v. *Sisters of Charity of Cincinnati, Inc.*, supra, 27 Ohio St. 2d 253–54.

In following *Cooper's* refusal to "derogate well-established and valuable proximate cause considerations"; id., 251; *Gooding* also concluded: "Relaxing the causation requirement might correct a perceived unfairness to some plaintiffs who could prove the possibility that the medical malpractice caused an injury but could not prove the probability of causation, but at the same time could create an injustice. Health care providers could find themselves defending cases simply because a patient fails to improve or where serious disease processes are not arrested because another course of action could possibly bring a better result. No other professional malpractice defendant carries this burden of liability without the requirement that plaintiffs prove the alleged negligence probably rather than possibly caused the injury. See e.g. *Freeman* v. *Rubin*, 318 So. 2d 540 [Fla. App. 1975] (plaintiff in legal malpractice action must show that, but for the attorney's negligence, the plaintiff had a good cause of action in the underlying suit)." *Gooding* v. *University Hospital Building, Inc.*, supra, 445 So. 2d 1019–20.[15]

---

[15] Some other courts supporting the traditional approach of reasonable medical probability standard are: *Murdoch* v. *Thomas*, 404 So. 2d 580, 582 (Ala. 1981); *Dumas* v. *Cooney*, 235 Cal. App. 3d 1593, 1 Cal. Rptr. 2d 584 (1991); *Hilden* v. *Ball*, 117 Idaho 314, 316 n.2, 787 P.2d 1122 (1989); *Fennell* v. *Southern Maryland Hospital Center, Inc.*, 320 Md. 776, 786, 580 A.2d 206

Against this backdrop of case law on the lost chance doctrine, we now discuss *LaBieniec* to take up the question of whether that case recognized the existence of the loss of chance doctrine in Connecticut. It did. That action was not instituted in the context of our wrongful death statute in General Statutes § 52-555. That action was started by Leonard LaBieniec individually while he was alive,[16] alleging[17] that the two defendant physicians were guilty of medical malpractice, both of whom he alleged had failed to detect lung cancer in X-rays taken of him during the course of a physical examination. This failure, he alleged, allowed the cancer to spread and metastasize to his brain. He also claimed that the "delay caused him emotional distress and a decreased chance of survival." *LaBieniec* v. *Baker*, supra, 11 Conn. App. 201. "At the close of the plaintiff's case, the trial court directed a verdict for each of the defendants because there was insufficient evidence to establish that the oversight of the defendants was the proximate cause of any injury to the plaintiff." Id. We affirmed.[18]

In *LaBieniec*, the plaintiff claimed "that the delay in diagnosis prevented the early removal of his lung or

(1990); *Cornfeldt* v. *Tongen*, 295 N.W.2d 638, 640 (Minn. 1980); *Clayton* v. *Thompson*, 475 So. 2d 439, 445 (Miss. 1985); *Pillsbury-Flood* v. *Portsmouth Hospital*, 128 N.H. 299, 305, 512 A.2d 1126 (1986); *Sherer* v. *James*, 290 S.C. 404, 408, 351 S.E.2d 148 (1986); *Alessio* v. *Cook*, 633 S.W.2d 770, 775–77 (Tenn. App. 1982); *Webb* v. *Jorns*, 473 S.W.2d 328, 337 (Tex. App. 1971), rev'd on other grounds, 488 S.W.2d 407 (Tex. 1972).

[16] Barbara N. LaBieniec, wife of the named plaintiff, was named executrix of his estate after his death and was substituted as a party plaintiff. *LaBieniec* v. *Baker*, supra, 11 Conn. App. 199.

[17] The amended complaint contained only one count. The defendants did not file any special defense to it.

[18] In *LaBieniec*, our opinion pointed out that "[t]he basic issues in this appeal are whether the trial court [improperly concluded (1)] that expert medical testimony was required in order for the jury to consider the plaintiff's claim of emotional distress and (2) [found] insufficient evidence to allow the case to go to the jury." *LaBieniec* v. *Baker*, supra, 11 Conn. App. 201. Our resolution of this latter claim at that time need not be addressed in this case.

earlier treatment *which decreased his chance for successful treatment.*" (Emphasis added.) Id., 207. Immediately thereafter, we stated: "To prevail on this claim, a plaintiff must show (1) that he has in fact been deprived of a chance for successful treatment and (2) that the decreased chance for successful treatment *more likely than not* resulted from the defendant's negligence. *Gooding* v. *University Hospital Building, Inc.*, [supra, 445 So. 2d 1020]. 'In other words, the plaintiff must show that what was done or failed to be done probably would have affected the outcome.' Id." *LaBieniec* v. *Baker*, supra, 11 Conn. App. 207. The *LaBieniec* court specifically stated: "We find that the plaintiff failed to adduce evidence that he in fact suffered a decreased chance for successful treatment. . . . The plaintiff in this case failed to show that the delay in diagnosis caused him any injury." (Citation omitted; internal quotation marks omitted.) Id. In addition to its earlier citation of *Gooding*, the *LaBieniec* court, further evincing its adoption of the traditional approach of reasonable medical probability, stated: " 'The loss of a speculative chance of recovery alone is not an injury from which damages flow. We are convinced that the better rule to follow is the one which requires the plaintiff to prove that the defendants' negligence in all probability, proximately caused the injury. Only by such proof will the plaintiff have proven proximate cause.' *Cooper* v. *Sisters of Charity of Cincinnati, Inc.*, [supra, 27 Ohio St. 252]; *Kirby* v. *Spivey*, [167 Ga. App. 751, 756, 307 S.E.2d 538 (1983)]; *Mortensen* v. *Memorial Hospital*, 105 App. Div. 2d 151, 157, 483 N.Y.S.2d 264 (1984); *Hanselman* v. *McCardle*, 27 S.C. 46, 48–49, 267 S.E.2d 531 (1980)." *LaBieniec* v. *Baker*, supra, 207–208. After again stressing that the chain of causation, in establishing liability, is concerned only "with reasonable probabilities and not possibilities"; id., 208; the *LaBieniec* court opined that "[i]n this case, the evidence failed to remove the

decreased chance of successful treatment theory from the realm of speculation." Id., 210. *LaBieniec* then clearly stated that "[s]ince there was no evidence which could have led the jury to a reasonable inference that the defendants' acts of malpractice were the direct and proximate cause of a decrease in the chance of success-ful treatment, it was proper for the trial court to direct a verdict on this issue." Id., 210.

*LaBieniec* recognized the existence of a cause of action for loss of chance[19] in medical malpractice cases and, in doing so, required that, in order to recover, a plaintiff was required to prove his entitlement to recover by the traditional approach to that doctrine. Id., 207–10. It recognized that causation is a matter of probability, not possibility. See, e.g., W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 41, p. 269. Our explication of *LaBieniec* discloses that its declaration on what a plaintiff must prove to recover when he makes a claim invoking that doctrine complies with our Supreme Court's definition of "a cause of action." For example, in *Gurliacci* v. *Mayer*, 218 Conn. 531, 546–47, 590 A.2d 914 (1991), our Supreme Court held: " ' "A cause of action is that single group of facts which is

---

[19] We employ loss of chance, as do other courts, to include "decreased chance," be it of successful treatment or survival itself. It is necessary not to step into a quagmire of semantics when discussing the name of this doctrine. For example, *Cooper* v. *Sisters of Charity of Cincinnati, Inc.*, supra, 27 Ohio St. 2d 242, is often said to have "rejected" the "loss of chance" doctrine. It is far more correct analytically to say of *Cooper* and its progeny that it is required that a plaintiff claiming recovery on loss of chance, while he may recover under that doctrine, must prove his entitlement to do so by the traditional approach of reasonable medical probability.

Lest the term "chance" in the phrase "loss of chance" always be considered to mean something speculative or less than reasonable probability, one is reminded of Judge Learned Hand's dictum that "words are chameleons which reflect the color of their environment." *Commissioner of Internal Revenue* v. *National Carbide Corp.*, 167 F.2d 304, 306 (2d Cir. 1948). Our Supreme Court, in *Petriello* v. *Kalman*, 215 Conn. 377, 393, 576 A.2d 474 (1990), referred to the "prevailing all or nothing" standard in terms of "a 51 percent *chance*" as opposed to "a 49 percent *chance*." (Emphasis added.)

claimed to have brought about an unlawful injury to the plaintiff . . . . 'A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action.' *Pavelka* v. *St. Albert Society*, 82 Conn. 146, 147, 72 A. 725 [1909]." ' " See *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 560, 436 A.2d 24 (1980); *Veits* v. *Hartford*, 134 Conn. 428, 434, 58 A.2d 389 (1948). Moreover, our analysis explicating *LaBieniec* shows that that court recognized that "actionable harm" required a breach of duty by the defendant and a causal connection between the defendant's breach and the resulting harm to the plaintiff. See *Catz* v. *Rubenstein*, 201 Conn. 39, 44, 513 A.2d 98 (1986).

The recognition of the existence of this cause of action by *LaBieniec* is confirmed by its determination that the evidence adduced by the plaintiff was insufficient to prove entitlement to relief under that doctrine. In the case presently before us, the trial court's action in refusing to charge the jury on the second count on the ground there was no such cause of action in Connecticut was harmful error.[20] Significantly, the trial court never decided that its refusal to do so was because of the insufficiency of the evidence, as was the case in *LaBieniec*.

Having determined that a cause of action for loss of chance does exist in Connecticut under *LaBieniec*, we now address the plaintiff's claim that, in effect, the trial court sua sponte "directed"[21] a verdict on that cause of action as set out in the second count of her amended

---

[20] Both the plaintiff and the defendant filed requests to charge on loss of chance, with each request stating the law as to what the plaintiff had to prove to recover as this court did in *LaBieniec*. See *LaBieniec* v. *Baker*, supra, 11 Conn. App. 207.

[21] There was no motion made by counsel for the defendant for a directed verdict as to the second count.

complaint. The plaintiff requested a charge on the doctrine[22] and the defendant filed his request to charge,[23] which set out the elements, which under *LaBieniec*, he claimed that the plaintiff had to prove in order to prevail on the loss of chance claim. The plaintiff claims on appeal that the trial court improperly denied her request to charge on loss of chance.

The defendant claims that the trial court correctly charged the jury in accordance with the case law of Connecticut as it applied to the evidence in this case and that it did not improperly refuse to charge in accordance with the plaintiff's request on loss of chance. In doing so, he argues that requests not applicable to the facts are properly refused and we agree with that as a general proposition. There are, however, no "facts" in a jury case, short of those admitted, until the jury establishes

[22] The plaintiff's request to charge stated the following: "The plaintiff has also claimed that he was harmed in that his chances for survival were decreased by [the defendant's] negligence. To prevail on this claim, the plaintiff must show 1) that he has been deprived of a chance for successful treatment and 2) that the decreased chance for successful treatment more likely than not resulted from the defendant's negligence. *LaBieniec* v. *Baker*, [supra, 11 Conn. App. 207], citing *Gooding* v. *University Hospital Building, Inc.*, [supra, 445 So. 2d 1020]. In this case the plaintiff claims that if [the defendant] or his employees had not been negligent he had a chance to avoid or survive the heart attack he suffered in 1987. In contrast, the defendant claims that [the decedent] would have suffered his heart attack no matter what was done and [the decedent's] chances of survival were no better or worse as a result of anything that the defendant did, or could have done."

[23] The defendant's request to charge stated the following: "The plaintiff is claiming that as a result of the defendant's alleged malpractice, he lost a chance of successful treatment. To prevail on this claim, the plaintiff must show (1) that [the decedent] had, in fact, been deprived of a chance for successful treatment, and (2) that the decreased chance for successful treatment, more likely than not, resulted from the defendant's negligence. *LaBieniec* v. *Baker*, [supra, 11 Conn. App. 207]. In other words, the plaintiff must show that what was done or what was not done probably would have affected the outcome. The loss of a speculative chance of recovery alone, however, is not an injury from which damages flow. Id , 208. Therefore, the plaintiff cannot be awarded damages for lost chance of successful treatment unless the plaintiff proves that the defendant's negligence, in all probability, proximately caused the injury."

them by their deliberations and verdict after proper instructions by the court. Until that occurs there is only "evidence" on the basis of which the jury makes its findings of fact. It is not our function to find facts. *Fukelman* v. *Middletown*, 4 Conn. App. 30, 31, 492 A.2d 214 (1985).

The trial court, in its instructions, however, did not permit the trier of fact to consider any evidence as to the loss of chance claim alleged in the second count of the amended complaint. The trial court did not reach the issue of the sufficiency of the evidence on the loss of chance claim as did the trial court in *LaBieniec*. It is apparent that the trial court was aware of the plaintiff's claims[24] because, in taking her exceptions, not only did she point out that she pleaded in a manner that set up alternative theories[25] as permitted but also that the court could have "charge[d] lost chance as a part of proximate cause instruction and not a separate count." The court indicated, "I'm aware of that, and I consciously eliminated that language from your request so you're fully protected on the record."

"Litigants have a constitutional right to have factual issues resolved by the jury." *Mather* v. *Griffin*, 207 Conn. 125, 138, 540 A.2d 666 (1988); *Seals* v. *Hickey*, 186 Conn. 337, 350, 441 A.2d 604 (1982). "The corollary to this constitutional right is that if there is no issue of fact, there is no right to a jury trial." *Audubon Parking*

---

[24] To that argument, at the time the plaintiff took her exceptions, the trial court said: "Well, I indicated in chambers, especially this morning, that I'm relying on a trilogy of cases, *Green* v. *Stone* [119 Conn. 300, 176 A. 123 (1934)], *Connellan* v. *Coffey*, [122 Conn. 136, 187 A. 901 (1936)], and principally the *Tulin* case [*Grody* v. *Tulin*, 170 Conn. 443, 365 A.2d 1076 (1976)]."

[25] The defendant suggests that because the plaintiff did not except to the court's charge on proximate cause and that he claims no error on appeal as to that charge that that somehow avails the defendant. We do not agree. Such a suggestion might have weight had it been also given in the context of an instruction on loss of chance as both *LaBieniec* and the defendant's request to charge spell out.

*Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993). On the record before us, the trial court never took a position on this corollary, given its view of *LaBieniec.* The jurors, as the fact finders, were not given the opportunity[26] to consider the second count under proper instructions. It was improper not to have permitted it. Where a trial court improperly fails to permit adjudication of an issue, the proper judgment ordinarily is to remand the matter so that the issue may be adjudicated. See *Bencivenga* v. *Milford,* 183 Conn. 168, 176, 438 A.2d 1174 (1981); *Alderman* v. *Hanover Ins. Group,* 155 Conn. 585, 590– 91, 236 A.2d 462 (1967); *Russo* v. *Seleit,* 98 Conn. 398, 413, 119 A. 569 (1923). That should be done here. An order for a new trial on the loss of chance claim is warranted in the interests of justice.

## II

The plaintiff next claims that the trial court improperly permitted the defendant to introduce evidence of contributory negligence when that doctrine was not pleaded.[27] She alleges that the defendant's witnesses were permitted to testify about facts that tended to prove that the decedent was "a noncompliant patient," had not properly attended to his own medical needs, and had caused his own death. Such testimony, she contends, was permitted despite her motion in limine and objection. The trial court denied the plaintiff's motion in limine[28] without prejudice. This evidence

---

[26] This, of course, is not to say that the trial court, under proper circumstances, may not appropriately grant a motion for a directed verdict on that count. No such motion, however, was ever made in this case.

[27] In addressing this claim, we also include our discussion of the plaintiff's related claim that the trial court improperly "refus[ed] to charge the jury that the decedent exercised reasonable care in attending to his health needs."

[28] The plaintiff's motion in limine stated the following: "The Plaintiffs respectfully request the Court to invoke its inherent discretionary powers, in limine, to exclude certain irrelevant, immaterial, and prejudicial evidence from this case. The Court has the discretionary authority to control proceed-

functionally, she continues, served to shift the responsibility for the decedent's "injuries" from the defendant to the decedent himself. Even assuming that a proper purpose could have existed for such evidence, the plaintiff administratrix further claims that the improper purpose of the evidence should have been filtered from the proper purpose by an appropriate jury instruction. She then makes the claim that she was entitled to have the jury instructed, as she requested, that, as a matter

ings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right to any party to a fair trial. *Richmond* v. *Longo*, 27 Conn. App. 30, 36 [604 A.2d 374, cert. denied, 222 Conn. 902, 606 A.2d 1328] (1992); citing C. Tait & J. LaPlante, Connecticut Evidence (1988) § 2.6.1. The Plaintiffs request the Court to exclude from evidence any evidence which tends to prove that the [decedent] was contributorily negligent or that he was a non-compliant patient. The Court is further requested to order that these matters not be inquired into by counsel or spontaneously discussed by any witness. In the alternative, the Plaintiffs request that a standing order be issued requiring counsel to request a sidebar conference prior to inquiring into the subject matter of any issue addressed herein. . . .

"In various depositions in this case witnesses have been asked by counsel about [the decedent's] compliance with medical advice. In particular, evidence has been produced that [the decedent] may have missed an appointment with the Defendant four months before his fatal heart attack, and that [the decedent] may have been reluctant to undergo a cardiac catheterization procedure. No evidence has been elicited that either of these alleged facts had anything to do with [the decedent's] death. The Defendant's expert witness, Dr. Barry Zaret, testified at his deposition that [the decedent's] missed appointment in June 1987 was absolutely irrelevant and did not enter into his formulation of an opinion in this case. Dr. Zaret further testified that the absence of surgery played no role in the formulation of his opinion. . . . The alleged facts are, therefore, irrelevant and immaterial and would be prejudicial to the Plaintiffs.

"If contributory negligence is claimed, it must be pleaded. Connecticut General Statutes § 52-114; *Delott* v. *Roraback*, 179 Conn. 406, 414 [426 A.2d 791] (1980). The Defendant has not pleaded contributory negligence. In the absence of such a plea, it is presumed that [the decedent] exercised reasonable care in relation to his own health. Connecticut General Statutes § 52-114; *Sady* v. *Liberty Mutual Ins. Co.*, [29 Conn. App. 552, 616 A.2d 819 (1992)].

"The Defendant's only use for evidence of [the decedent's] missed appointment or reluctance to undergo cardiac catheterization, is to improperly inject into this case the issue of whether [the decedent] acted reasonably in attending to his own health. [The decedent's] reasonableness is not an issue in this case and introducing evidence on that issue is immaterial, irrelevant and prejudicial."

of law, her decedent exercised reasonable care in regard to his own treatment.

In responding, the defendant claims that the trial court did not abuse its discretion in allowing evidence of the decedent's conduct. He also maintains that the denial of the plaintiff's motion in limine, when originally made on June 28, 1994, is not claimed to be improper. In addition, the defendant claims that when the motion in limine was renewed on July 12, 1994, the court indicated that it would make rulings when questions, implicating any claimed contributory negligence, arose. It is his claim that the plaintiff, rather than following the court's suggestion that it be done on a question by question basis, did not make such objections. Moreover, he claims that the circumstance that the decedent did not respond to the symptoms from which he was allegedly suffering was not indicative of contributory negligence but, rather, was directly relevant to the manner in which the telephone calls would have been handled by the defendant, assuming the calls were even made as alleged.

At the outset of our analysis, certain background circumstances must be pointed out. The defendant had not pleaded contributory negligence. Yet the plaintiff, as disclosed by her motion in limine, maintained that certain deposition testimony raised that issue. In initially denying the motion in limine, the court indicated, inter alia, that the motion, filed as it was prior to the presentation of evidence, did not realistically present a workable vehicle for a blanket ruling at that time. The court indicated that it believed that this motion was a poor substitute for appropriate objections to evidence offered on direct or cross-examination. When the plaintiff renewed this motion on July 12, 1994, the court indicated that the appropriate time to make an objection about a defense that is not in the case is by a request to charge and that if the state of evidence at the time

the charge is given was such as to justify giving that request then the request would be given.[29]

To the defendant's argument that the plaintiff has not properly preserved the denial of her motion in limine for review, the plaintiff contends that it was not necessary for her to have continued to object at the trial to the "evidence of contributory negligence." She insists that this is so because of her vigorous posture on the motion in limine itself at the trial. The plaintiff maintains that the claim was distinctly raised at trial and was, therefore, properly preserved. For that she cites *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 311 n.2, 541 A.2d 858 (1988). Although there appears to be some general authority for the plaintiff's position; see, e.g., id.; *State* v. *Kluttz*, 9 Conn. App. 686, 703 n.12, 521 A.2d 178 (1987); we cannot accept her claim here.

This case is factually distinguishable from *West Haven Sound Development Corp.* In support of the argument, she cites Practice Book § 4185,[30] which was also

---

[29] During this same colloquy about contributory negligence the trial court also said: "Do you want me to charge mitigation of damages out of the case, or comparative negligence, I will expressly charge it out of the case if it has not been pleaded or it has not been proved."

The plaintiff on appeal argues that the trial court did not do what it said that it would do. Here, we would point out that the trial court did not charge on comparative negligence and that the verdict forms submitted to the jury, which it is fair to assume were inspected by counsel, did not contain any provision for contributory or comparative negligence of the plaintiff.

[30] Practice Book § 4185 entitled "Errors Considered" provides: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule

involved in *West Haven Sound Development Corp.* In that case, the Supreme Court decided that because Practice Book § 4185 had been followed, the issue claimed to be reviewable under that rule was properly preserved. *West Haven Sound Development Corp.* v. *West Haven,* supra, 207 Conn. 308. That is not so here. Reviewability under § 4185 is preserved "without a further objection or exception provided that the grounds for such objection and exception, and the ruling thereon as previously articulated, remain the same." We believe that the letter and the spirit of § 4185 were not adhered to by the plaintiff at the trial. Particularly so because the plaintiff introduced, as a full exhibit, office records of the defendant that include the notation: "6/24/87 Pat[ient] did not show." June 24, 1987, was the date set for the next appointment at the time of his preceding appointment of April 30, 1987.[31] This exhibit was offered by the plaintiff without any request by her that the fact that the decedent did not keep his June 24, 1987 appointment be redacted in any fashion or that there be any limitation upon its use. This is significant because, in her motion in limine, she specifically wanted excluded evidence that "[the decedent] may have missed an appointment with [the defendant] four months before his fatal heart attack . . . ." The plaintiff cannot affirmatively introduce such evidence that she has earlier, in her motion in limine, characterized, and still does characterize, as "contributory negligence" and then seek review of that claim on appeal.

without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

[31] These office records of the defendant, after setting the defendant's medical notes of the decedent's April 30, 1987 visit, contain the notation, "R-3 months." This notation, based not only on this exhibit but also on the testimony at the trial fairly means that his next appointment with the defendant was June 24, 1987.

Second, the plaintiff also did not object to such evidence[32] despite the fair indication of the court that she do so on a question by question basis, both at the time the motion in limine was originally decided on June 22, 1994, and when it was renewed on July 12, 1994. This circumstance itself operates to defeat the plaintiff's claim hereby rendering such cases as *West Haven Sound Development Corp.* v. *West Haven,* supra, 207 Conn. 308, and *State* v. *Kluttz,* supra, 9 Conn. App. 686, inapposite. Nevertheless, in the interest of justice, and to avoid what might be suggested as plain error, i.e., admitting evidence on a crucial issue where that issue, i.e., contributory negligence, had not been raised in the pleadings or the trial court's jury instructions, we discuss the plaintiff's argument on this claim.

It is helpful to refer to certain principles to structure our analysis of the respective positions of the parties. "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 557, 525 A.2d 954 (1987); *Lundberg* v. *Kovacs,* 172 Conn. 229, 232, 374 A.2d 201 (1977); *Montano* v. *Kin-Therm, Inc.,* 4 Conn. App. 187, 190, 493 A.2d 266 (1985). The answer is the pleading that is the response by the defendant to the plaintiff's complaint, admitting, denying in whole or in part the allegations of the plaintiff's complaint and which may interpose affirmative matter. See Ballentine's Law Dictionary (3d Ed. 1969). What is in issue is determined by the pleadings and,

---

[32] On direct examination the defendant testified, without objection, that his last prescription for the decedent's heart medication was given in March, 1987, for a three month supply and that he had no record of a call from the decedent thereafter for a refill. Very shortly thereafter, the defendant was again asked if he had any indication that the decedent contacted his office "and asked your office to refill his cardiac medication." At this point, the plaintiff's counsel said, "Your Honor, objection. Again it's leading, but I think [defendant's counsel] asked it about three questions ago and I think he answered." The court sustained the objection.

once they have been filed, the evidence proffered must be relevant to the issues raised in the pleadings. *Telesco* v. *Telesco*, 187 Conn. 715, 720, 447 A.2d 752 (1982); *Arey* v. *Warden*, 187 Conn. 324, 332, 445 A.2d 916 (1982); *Tehrani* v. *Century Medical Center*, 7 Conn. App. 301, 308, 508 A.2d 814 (1986).

" 'Relevant evidence is evidence which has a logical tendency to aid the trier of fact in the determination of an issue. *Pitt* v. *Kent*, 149 Conn. 351, 357, 179 A.2d 626 (1962).' " *Allen* v. *Nissley*, 184 Conn. 539, 545, 440 A.2d 231 (1981), quoting *Berndston* v. *Annino*, 177 Conn. 41, 43, 411 A.2d 36 (1979); see *Plumb* v. *Curtis*, 66 Conn. 154, 166, 33 A. 998 (1895). "No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Echols*, 203 Conn. 385, 393, 524 A.2d 1143 (1987), quoting *State* v. *Towles*, 155 Conn. 516, 523, 235 A.2d 639 (1967). It has been said that "[o]ne fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . ." (Citations omitted.) *Allen* v. *Nissley*, supra, 545, quoting *Berndston* v. *Annino*, supra, 43.

The trial court has broad discretion to determine both the relevance and remoteness of evidence and its rulings there will be set aside only on a showing of a clear abuse of discretion. *Dunham* v. *Dunham*, 204 Conn. 303, 324, 528 A.2d 1123 (1987); *Hughes* v. *Contemporary Mission, Inc.*, 180 Conn. 150, 153, 429 A.2d 827 (1980); *Metropolitan District* v. *Housing Authority*, 12 Conn. App. 499, 508, 531 A.2d 194, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987). "[A]ny fact may be proved which logically tends to aid the trier in the determination of the issue." *Litvaitis* v. *Litvaitis*, 162

Conn. 540, 548, 295 A.2d 519 (1972). " ' "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." *Plumb* v. *Curtis*, [supra, 66 Conn. 166].' *Pitt* v. *Kent*, [supra, 149 Conn. 357]." *Burns* v. *Gould*, 172 Conn. 210, 214, 374 A.2d 193 (1977). On the other hand, a court has the discretion to exclude relevant evidence where it is more prejudicial than probative. See *Batick* v. *Seymour*, 186 Conn. 632, 637, 443 A.2d 471 (1982); cf., e.g., *Thibodeau* v. *Connecticut Co.*, 139 Conn. 9, 14, 89 A.2d 223 (1952). This court has stated that "[a]ll evidence adverse to a party is, to some degree, prejudicial. To be excluded, the evidence must create prejudice that is *undue* and so great as to threaten an injustice if the evidence were to be admitted." (Emphasis in original.) *Chouinard* v. *Marjani*, 21 Conn. App. 572, 576, 575 A.2d 238 (1990).[33] These considerations, however, do not encompass all the principles that a trial judge confronts in passing upon claims of admissibility of evidence during a lengthy jury trial.[34]

Once the issue is joined by the parties, the presentation of evidence involves not only that of the plaintiff's case but also that of the defendant. Both the plaintiff and the defendant fall within the well settled principle that a party cannot, however, "be deprived of the right to support his cause by the introduction of evidence tending to prove all facts upon which issue has been joined, provided it is relevant and not excluded by some rule of law. *Moran* v. *New York, N. H & H. R. Co.*, 107 Conn. 454, 457, 140 A. 818 [1928]." *Morico* v. *Cox*, 134 Conn. 218, 225, 56 A.2d 522 (1947); *Berndston* v.

[33] One authority has aptly noted in citing *Batick* v. *Seymour*, supra, 186 Conn. 637, that, "in that case, the Supreme Court . . . suggested that the standard for admitting evidence that is claimed to be prejudicial should be lower in a civil case than in a criminal case, where the stakes are higher." (Internal quotation marks omitted.) C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.1.3, p. 228.

[34] The trial of this case encompassed about five weeks.

*Annino,* supra, 177 Conn. 44. "Our law gives a defendant the right to introduce evidence of those relevant and material facts which logically tend to prove the issues involved and which is not excluded by some rule of law." *Ayers Co.* v. *Novelty Textile Mills, Inc.,* 168 Conn. 577, 579, 362 A.2d 522 (1975), citing *Papa* v. *Youngstrom,* 146 Conn. 37, 40–41, 147 A.2d 494 (1958). "The trial court has broad discretion in deciding the relevancy of evidence as it pertains to cross-examination and on appeal the appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." *State* v. *Briggs,* 179 Conn. 328, 332–33, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980).

We are aware of the difficulty in balancing the probative value of evidence against its prejudicial effect and have recognized that the trial court has broad discretion in admitting evidence so that its rulings will not be disturbed absent a showing of a clear abuse of discretion. *Chouinard* v. *Marjani,* supra, 21 Conn. App. 575. The right of cross-examination; see *Gordon* v. *Indusco Management Corp.,* 164 Conn. 262, 271, 320 A.2d 811 (1973); "does not . . . permit the defendant to present evidence that is irrelevant or otherwise inadmissible." *Jacobs* v. *Thomas,* 26 Conn. App. 305, 317, 600 A.2d 1378 (1991), cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). "[I]t is settled Connecticut law that inquiry upon cross-examination is limited by the scope of the direct examination . . . [but] that scope is determined by all of the evidence offered during direct examination" including an exhibit offered and received as a full exhibit. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 525, 457 A.2d 656 (1983).

In applying these principles to the case before us, we first point out that the defendant's answer to the amended complaint put in issue not only the allegations of his negligence but also whether the various telephone

calls to his office during the week of October 19, 1987, allegedly seeking his professional assistance were ever made. The answer also denied the allegation that the decedent was under the care and treatment of the defendant from August, 1985, until his death on October 24, 1987. This was consistent with his claim that he had not seen or spoken to the decedent since April 30, 1987, which was the date of the defendant's last examination of the decedent. This period of almost six months covered the decedent's not keeping his June 24, 1987 appointment and also the time frame of the vigorously disputed telephone calls allegedly made to the defendant's office during the week of October 19, 1987. The plaintiff strongly maintained that the decedent made those telephone calls during that week. The defendant not only denied that but also produced the testimony of employees of his office at that time to the effect that no such telephone calls had been received. Moreover, certain of his office records, i.e., "call book" entries, were introduced to support his position. Keeping in mind that the defendant was alleged to have been legally responsible because "[he], his agents or employees, failed to exercise reasonable care" the issues joined under the pleadings fairly forecast an evidentiary presentation by both parties of many relevant considerations. These included, broadly speaking, the medical history of the decedent, his course of treatment by the defendant, the events of the week of October 19, 1987, the defendant's office practices and procedures when patients with known heart disease, such as the decedent, call his office with complaints.[35] Such matters, all within the issues joined by the pleadings, provided many relevant circumstances necessary to advance the inquiry of the existence of the negligence alleged.

[35] The significance and the scope of the alleged telephone calls to the defendant's office during the week of October 19, 1987, is acknowledged by the plaintiff, when in her motion to set aside the verdict she states: "The essence of all of the plaintiff's claims was that the defendant doctor negligently responded, or failed to respond, to [the decedent's] telephone calls."

It is evident that the trial court, confronted with a spirited presentation of evidence by both parties, fairly recognized the rights of each. It took the position that contributory negligence was not in the case and its rulings going to that claim demonstrate that. In doing so, it properly weighed the probative value of relevant evidence against claimed prejudice. It ruled on objections as they were made. As noted, the trial court had wide discretion in admitting relevant evidence and that involved recognizing that a party cannot be deprived of its right to support its position by introducing evidence tending to prove facts on which issue had been joined unless excluded by some rule of law. The trial court recognized that principle in its rulings as evidence was presented at the trial, as to which we find no clear abuse of discretion.

After the final arguments of counsel in which contributory negligence was not argued to the jury, the court instructed the jury. In doing so, it not only directed that it was required to follow the law as the court articulated it, but also made it abundantly clear that its deliberations on liability involved the negligence and proximate cause as to the defendant only. Moreover, the verdict forms submitted to the jury contained nothing that asked the jury to assess any fault on the part of the plaintiff's decedent. The plaintiff, however, did file a request to charge on contributory negligence, which the trial court declined to give. We agree with the trial court.

The plaintiff claims that the trial judge "apparently agreed" with her counsel early in the trial that a curative instruction would be needed on the issue of contributory negligence. This was at the time of the hearing of the plaintiff's motion in limine.[36] After consulting the

[36] The plaintiff's brief recites the following: "The judge told trial counsel early in the trial that the appropriate time to object to a defense which is not in the case is by a request to charge. The judge said 'Do you want me to charge mitigation of damages out of the case, or comparative negligence,

transcript reference the plaintiff cites for this position, we cannot agree. Rather, the court indicated that if the state of the evidence was such as to justify granting such a request, then the court would give it. It appears that the court, after all the evidence was presented, decided that the state of the evidence was such that it need not give such a request. Factored into its decision not to do so were both that contributory negligence had not been argued by the parties and its implicit conclusion that on the evidence that matter was just not in the case. Moreover, in discussing the plaintiff's exception to its not granting the request as filed, the trial court also pointed out that the request was "limited to the statute [General Statutes § 52-114]. . . . It's limited to the presumption of due care." In addition, the trial court referred to a case in volume 29 of the Connecticut Appellate Reports,[37] which the trial court said "indicates that the statute cannot be referred to in a vacuum" and that the request was rejected "because of the case law which indicates that the statute is only applicable and doesn't furnish any guidance to the jury unless there is an affirmative defense in the case."

I will expressly charge it out of the case, if it has not been pleaded or it has not been proved.' "

The transcript discloses that the trial court said: "One of the problems I have with motions in limine is they're based upon assumptions as to what evidence will be presented. And, by and large, to a certain extent, it can be anticipated. But the appropriate time to make that type of objection about a defense which is not in the case, or something by way of mitigation of damages is not in the case, is by request to charge. And if the state of the evidence, at the time I get that request, is such as to justify it, you'll get it. Do you want me to charge mitigation of damages out of the case, or comparative negligence, I will expressly charge it out of the case, if it has not been pleaded or it has not been proved. Do you understand me?"

In the same colloquy, the trial court said: "I don't think this is an appropriate matter for a motion in limine. We'll have to do it on a question by question basis."

Almost immediately thereafter, the court denied the motion in limine.

[37] This case was not referred to by name by the trial court. The plaintiff's counsel, however, said that he was familiar with that case.

We agree that the trial court properly refused the proffered request. "General Statutes § 52-114 explicitly states that there is a presumption that the plaintiff in a negligence action was exercising reasonable care at the time of injury, *and* that the defendant must specially plead contributory negligence. The statute allocates the burden of proof of contributory negligence to the defendant once it has been specially pleaded"; (emphasis added) *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 552, 556, 616 A.2d 819 (1992); and in this case it was not.

"To be acceptable, a request to charge must be relevant to the evidence and issues presented in court." *State* v. *Timmons*, 7 Conn. App. 457, 467, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987) (certification improvidently granted). "It is the law of this state that a request to charge which is relevant to the issues of a case and which is an accurate statement of the law must be given." *Mazzucco* v. *Krall Coal & Oil Co.*, 172 Conn. 355, 357, 374 A.2d 1047 (1977). The plaintiff's request did not meet these tests.

The judgment is reversed as to the second count of the amended complaint and the case is remanded for a new trial on that count.

In this opinion the other judges concurred.