[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO SET ASIDE THE VERDICT
This is a negligence action in which the plaintiff, Jacqueline Kirk, claimed to have been hurt in a 1991 incident in which she alleged that a supermarket cart was negligently run over her foot by a Stop Shop supermarket employee. She also alleged she had been pushed in the back at about the same time by the same cart. She sought damages for injuries to her back and a contusion to her foot. However, the heart of her claim for damages consisted of aggravation of a preexisting bipolar disorder about which she offered evidence. The disorder has debilitated her and badly affected her life during the intervening years to the date of trial.
The plaintiff's husband also had a claim for loss of consortium. The jury returned a general verdict for the defendant after deliberating parts of two days. Both plaintiffs claim that the verdict should be set aside because the court denied a Motion in Limine and refused to rule prior to the start of evidence that CT Page 6737 the defendant could not impeach Dr. Paul Carpenter, a chiropractor, concerning a consent order he entered with the State of Connecticut as a result of a complaint filed with the State Health Department against him concerning his treatment and billing practices. The plaintiffs also ask that the verdict be set aside because the trial court did not charge the jury as requested concerning liability of the defendant for independent contractors who might have been on the premises stocking merchandise. Plaintiff's Motion to Set Aside is denied for reasons which follow.
The court will first take up the claim regarding denial of the Motion in Limine. As a result of a petition filed with it, the State of Connecticut Department of Health, Bureau of Health System Regulation, Division of Medical Quality Assurance, entered into a consent order with Dr. Carpenter concerning a complaint rendered against him consisting of 15 separate counts alleging that Dr. Carpenter administered inappropriate treatment, charged for treatments never administered, failed to properly maintain records of treatment and diagnosis and falsified medical and billing records. Although the document in question describes its contents as a consent order which does not reprimand, censure, place on probation, suspend or revoke respondent's license, it nonetheless provided not only that the doctor would pay $5,000 to the Treasurer of the State of Connecticut and comply with all state and federal statutes and regulations applicable to his licensure as a part of the order but also stated that this consent order with attached 15 count complaint be "a Matter of public record."
The court's first observation is that Dr. Carpenter was a damages witness. The jury would not reach the issue of how much damages should be awarded unless it first determined that the defendant Stop Shop was legally liable to pay the damages. There was a general verdict in this case. According to the general verdict rule, the jury is presumed to have found all disputed issues in favor of the defendant including that the defendant was not negligent and not the proximate cause, by virtue of any such negligence, of the collision in question. If the defendant was not negligent or, even if negligent, not guilty of proximately causing any accident by virtue of its negligence, it could not be held responsible for any damages including Dr. Carpenter's treatment. It is apparent to the court that into their second day of deliberations the jury was still wrestling with the negligence issue. It asked to have read back the CT Page 6738 plaintiff's testimony on direct and cross examination as to how the Stop Shop incident happened. Furthermore, apparently because all medical bills had been paid prior to trial and would result in a post verdict credit to the defendant, the plaintiff Jacqueline Kirk in final argument chose to withdraw her claim for over $30,000 in economic damages attributable to medical bills for all such expenditures including Dr. Carpenter's $8545.00 bill. This had the effect of narrowing the jury's focus to the plaintiff's main claim, noneconomic damages related to partial permanent loss of the thoracic and lumbar spine and the physical, mental and emotional pain and suffering Kirk contended resulted from the defendant's aggravation of her pre-existing bipolar condition. The result of the withdrawal of the claim for doctor's bills was that the jury did not have to consider an award of damages for Dr. Carpenter's bill. Notwithstanding that, the plaintiff now argues that the doctor's testimony was of additional importance in bootstrapping the testimony of the plaintiff as to how the accident happened by opining that the kind of injury he found was consistent with the plaintiff's version of how the impact occurred.
When the court refused to grant in limine relief, it advised the plaintiffs' counsel to make any appropriate objection at the time of trial. At trial such evidence might be offered against the context of the already admitted evidence and relevancy could be better understood. Additionally, the evidence concerning the State Health Department proceeding referenced in the motion was too sparse to determine its admissibility at that time. The plaintiffs chose to make no general objection at the time of trial as a matter of trial strategy. By failing to object, the plaintiff failed to preserve that claim. Borkowski v. Sacheti,43 Conn. App. 294, 316, 682 A.2d 1095 (1996). When he testified, the doctor chose to get into detail about the Health Department proceeding, but when he did so, the plaintiffs did not move for mistrial. Evidence was admitted at trial through Dr. Carpenter that the entire State health proceeding was a retaliatory act brought by a managed care entity called Physicians' Health Service which had refused to pay for treatment rendered by Dr. Carpenter to numerous patients but had, after its refusal, been obliged to do so by some other tribunal and then sought by making the complaint to punish the chiropractor it had been forced to pay. Dr. Carpenter also offered evidence that he made this consent agreement on his attorney's advice to cut off costs of defending himself. It is noteworthy that (1) in the agreement Dr. Carpenter agreed that this particular consent order was a "public CT Page 6739 record"; (2) he agreed to pay the sum of $5,000 to the State Health Department in connection with the case; and (3) he accepted an order to follow the pertinent statutes and regulations concerning the practice of that profession. Where no trial objection was made, the inquiry was relevant where at that trial stage the plaintiff still claimed damages against the defendant consisting of bills from this very medical provider, Dr. Carpenter, for necessary care and treatment he said he had rendered. The court sustained the plaintiff's limited objection as to the attachments to the consent order which set out the various complaints as to the persons treated in the 15 counts and the document itself was not introduced when the defendant chose not to offer it without the attachments.
The plaintiffs also argue that the defendant failed to follow a pretrial order requiring premarking of exhibits, like the certified copy of the State Health Department Consent Order. However the plaintiff's were alerted to a disciplinary proceeding at an earlier deposition and their counsel was given a copy of the order on June 4th, well before Dr. Carpenter's June 10th testimony. The court does not find any injustice done.
The court finds no grounds to set aside the verdict based on denial of in limine relief.
The court will next take up the claim that the court should have charged on the plaintiff's supplemental request as to independent contractors. The plaintiffs made the following charge request.
INDEPENDENT CONTRACTOR
 "In this case there was evidence introduced by the Defendant Stop Shop through its witness, Mr. Erasmus, that on the day of the incident alleged, `vendors' other than Stop Shop employees were allowed on the sales floor and, on occasion, allowed to use Stop Shop equipment while on the sales floor. There was also evidence on cross examination of Mr. Erasmus that Stop Shop exercised control over these vendors. For instance, they were required to sign in before entering the premises, the store determined which vendors and when were allowed on the floor and determined which vendors and when could `pack out' their merchandise. CT Page 6740
 In general, the employer of an independent contractor is not liable for the torts of the independent contractor. Wright v. Coe and Anderson, Inc., 156 Conn. 145 239 A.2d 493
(1968). However, when the contractor loses his independence, the employer of the contractor becomes vicariously liable for the torts of the contractor. `The determination of the status of an individual as an independent contractor or employee is often difficult . . . and, in the absence of controlling considerations, is a question of fact.' Tianti v. William Raveis Real Estate, Inc., 231 Conn. 690, 696, 651 A.2d 690 (1995). `It has long been established that the fundamental distinction between an employee and an independent contractor depends on the existence of the right to control the means and the method of work.' Id. `The test of the relationship is the right to control. It is not the actual interference with the control, but the right to interfere, that makes the difference between the independent contractor and the employee.' Id.
 Therefore, if you find in this case that the incident involved not a Stop Shop employee, but a `vendor', you must then decide whether Stop Shop exercised this type of control over that vendor so as to make Stop Shop liable for the injuries to Mrs. Kirk which you find were caused by that vendor."
The first important observation which must be made here is that neither plaintiff pled that the person who struck Mrs. Kirk was an independent contractor or vendor under the control of Stop Shop nor did they plead that the person was a vendor at all. Nor was, any request made to plead this by amendment. Instead, the plaintiffs pled 14 separate times that the person who was pushing the cart which struck Mrs. Kirk was a Stop Shop employee and offered evidence through Mrs. Kirk's testimony specifically stating that the cart pusher was an employee and that he was so dressed in the manner of employees. The plaintiffs were not entitled to an instruction on a theory of law as to the culpability of independent contractors because they did not plead, either affirmatively or in the alternative, that the person who struck Mrs. Kirk was an independent contractor. Instead, the plaintiffs pled in 14 separate parts of the complaints that the person who struck Mrs. Kirk was an employee. Plaintiffs took no exception to the charge given. CT Page 6741
The court charged as follows:
 "You should understand that if you determine that Mrs. Kirk was injured by a negligent act of one of Stop Shop's employees engaged in stocking, that a legal doctrine called `respondeat superior' would make Stop Shop liable for his acts."
The jury was not charged that the defendant could avoid liability on the basis of some independent contractor theory. The court will not set aside the verdict on these grounds since it believes the charge was correct in law and sufficient to guide the jury.
The court further finds that no injustice was done here. For almost two weeks, the plaintiffs were granted full opportunity to present all of their evidence. Their attorney did so with considerable skill. Pursuant to the plaintiffs' request and, despite the defendant's exception, the charge included an instruction that the plaintiff could recover for pain and suffering not due to organic ailment so long as it was not consciously fabricated, even if it were imaginary or psychosomatic in nature and suffered because of the defendant's aggravation of a preexisting neurotic or psychic weakness. In doing so the court chose to treat pain arising from aggravation of mental illness equally with that arising from physical ailments. Thus, the jury was instructed to consider some of the plaintiffs' most painful possible sequela and award damages if proved that they were aggravated by the defendant's negligence.
Every aspect of this case was contested. The case was tried fairly. After due deliberation, the jury determined the plaintiffs had not proved their case and rendered a verdict for the defense. The jury could have fairly reached the result that it did.
The motion to set aside the verdict is denied. Judgment on the verdict is ordered to enter in favor of the defendant.
Flynn, J.