## STEVEN R. POULIN *v.* ROBERT S. YASNER
### (AC 19671)

Landau, Pellegrino and Dupont, Js.

Argued December 6, 2000—officially released August 7, 2001

*Eddi Z. Zyko*, for the appellant (plaintiff).

*James J. Noonan*, with whom, on the brief, was *James Rosenblum*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, Steven R. Poulin, appeals from the judgment for the defendant, Robert S. Yasner, in this medical malpractice cause of action. The judgment followed the granting of a directed verdict in favor of the defendant and the denial of the plaintiff's motion to set aside the directed verdict. The issues are (1) whether the trial court improperly precluded the plaintiff's expert from testifying as to the proximate cause of the plaintiff's injuries and damages, and (2) whether without such expert testimony, the jury would have had enough other evidence to conclude that more probably than not the defendant's breach of the standard of care was the proximate cause of the plaintiff's injuries.[1] We reverse the judgment in part and affirm it in part.

The following facts and procedural history are necessary to our resolution of the plaintiff's appeal. The plaintiff initially sought medical treatment from the defendant in September, 1986. From that time until October, 1992, the defendant was the plaintiff's primary care physician. During those six years, the plaintiff saw the defendant numerous times for varying reasons.

On September 4, 1992, the plaintiff made an appointment with the defendant because he was experiencing

---

[1] The parties' briefs concentrate on the first issue. The trial court, however, considered the second issue in depth.

abdominal pains and nausea. After seeing the defendant that day, a member of the defendant's staff transported the plaintiff from the defendant's office to Norwalk Hospital, where he remained for seven weeks. He was diagnosed as suffering from alcoholism and acute pancreatitis.

In August, 1994, the plaintiff commenced an action against the defendant[2] in two counts alleging (1) a failure to prevent, diagnose, treat or refer him for prevention, diagnosis and treatment of alcoholism and acute pancreatitis, and (2) a breach of a contractual obligation. At the close of the plaintiff's case, the court directed a verdict for the defendant pursuant to the defendant's motion, which the court thereafter refused to set aside. The court then rendered judgment for the defendant. This appeal followed.

I

The plaintiff sought damages in a two count complaint, one count in negligence and the other in contract. During oral argument to this court, we questioned whether the directed verdict for the defendant applied to count two of his complaint as well as to count one. Because a final judgment on both counts is a necessary predicate to our jurisdiction; see Practice Book §§ 61-1, 61-2, 61-3; we address that issue first.[3]

We requested the submission of simultaneous supplemental briefs by February 14, 2001,[4] limited to the issue

---

[2] The plaintiff originally named Merck Pharmaceuticals as a codefendant, but withdrew that claim prior to trial.

[3] We note that the plaintiff did not attempt to obtain, pursuant to Practice Book § 61-4 (a), "a written determination that the issues resolved by the judgment [on count one] are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified . . . ." If such determination is obtained from the trial court and the chief judge of this court concurs, an immediate appeal may be taken even in the absence of a judgment disposing of the entire complaint.

[4] After submission of the supplemental briefs, the plaintiff filed a motion to strike the defendant's supplemental brief. The defendant objected to that motion, and on March 8, 2001, this court denied the motion to strike.

of whether there was a final judgment as to count two of the plaintiff's complaint, the alleged breach of contract cause of action.

The parties' arguments on the defendant's oral motion for a directed verdict, which the defendant made after the plaintiff had rested his case, related solely to count one. The court's oral rationale for the judgment as rendered does not explicitly mention either count. Our review of the transcript leads us to conclude, however, that the court intended to render judgment for the defendant on both counts. In the court's remarks to the jury explaining the direction of the verdict, the court stated that the case was both a breach of contract case and a medical negligence case.[5]

In his brief to this court, the plaintiff does not argue that the trial court improperly rendered judgment for the defendant as to the contract claim alleged in count two. Furthermore, we find nothing in the transcript showing that the plaintiff produced any evidence regarding the existence of a contract between him and the defendant concerning a specific result, i.e., guaranteeing that the plaintiff would not suffer from alcoholism or acute pancreatitis. Also, the plaintiff did not produce any evidence as to the care the defendant should have provided pursuant to that contract or as to the breach of any contract.

The trial court was aware of both counts, and we conclude that there was a final judgment as to both. We, therefore, affirm the judgment of the court for

[5] The court stated in relevant part: "In a medical negligence case, even though this is a breach of contract and a medical negligence case, it all comes down to the same . . . a medical negligence case." The two causes of action are distinct. See *Rumbin* v. *Baez*, 52 Conn. App. 487, 491, 727 A.2d 744 (1999). Because a contract claim involves a situation where the physician and patient contract for a specific result; id.; proof of a contract claim does not usually require expert medical testimony.

the defendant as to count two and conclude that the judgment as to count one is ripe for appellate review.

## II

The plaintiff maintains that the court improperly precluded his expert from testifying as to the proximate cause of the plaintiff's injuries and damages. The plaintiff's compliant alleges that as a proximate result of the defendant's negligence he almost died, that he suffered a lengthy hospitalization and that he underwent multiple surgical procedures. He alleges that he had spent $200,000 to the date of the complaint for hospitalization and medical care, and that he had suffered and will continue to suffer physical and emotional pain, loss of earning capacity and impairment of the ability to carry on life's activities.

According to the plaintiff, the court's ruling to preclude the expert's testimony concerning proximate cause led to the improper granting of the defendant's motion for a directed verdict. The plaintiff also argued to the court that even without expert testimony as to proximate cause, the jury's general knowledge of alcoholism and the plaintiff's testimony were sufficient to allow the jury to consider whether the defendant's conduct proximately caused the plaintiff's injuries. The plaintiff claims, and the court recognized, that there are instances in which the failure to diagnose and to treat can result in a lost opportunity that can form the basis for proximate cause in a medical malpractice case. The defendant argued to the court that the plaintiff had not produced any evidence as to the proximate cause of the plaintiff's injuries, either by an expert witness or through any other evidence.

We begin with a brief discussion of the well settled legal principles applicable to this case. A court should direct a verdict if, on the evidence, the jury reasonably and legally could not have reached any other conclu-

sion. *Petyan* v. *Ellis*, 200 Conn. 243, 244, 510 A.2d 1337 (1986). A directed verdict is justified if the plaintiff fails to present any evidence as to a necessary element of his or her cause of action. See *Wallace* v. *St. Francis Hospital & Medical Center*, 44 Conn. App. 257, 264, 688 A.2d 352 (1997).

It is also instructive to discuss the issue of proximate cause because it was the lack of evidence as to that element that was, according to the court, fatal to the plaintiff's case. "To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct 'legally caused' the injuries. . . . The first component of 'legal cause' is 'causation in fact' . . . [which] is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Manheimer*, 212 Conn. 748, 757, 563 A.2d 699 (1989), overruled in part on other grounds, *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995).

Legal cause also includes proximate cause. Our Supreme Court "has often stated that the 'test' of proximate cause is whether the defendant's conduct is a 'substantial factor' in producing the plaintiff's injury. . . . The 'substantial factor' test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence. . . . In applying this test, we look from the injury to the negligent act complained of for the necessary causal connection." (Citations omitted; internal quotation marks omitted.) Id., 759.

The following additional facts and procedural history are relevant to our resolution of the plaintiff's appeal. The plaintiff alleged in his complaint that he engaged

the services of the defendant to be his primary treating physician in September, 1986, and that the defendant had a duty to ensure that the plaintiff received good quality medical care and to do him no harm. The complaint alleged that the defendant breached that duty in that the defendant was negligent and careless in twenty-seven different ways, and that such negligence and carelessness proximately caused the plaintiff's injuries and damages. The complaint further alleges that the defendant failed to diagnose acute pancreatitis and the underlying alcoholism, and failed either to treat or to refer the plaintiff to others for such treatment.

At trial, the plaintiff offered expert testimony from Robert H. Resnick, a board certified physician in internal medicine, who testified that the prevention, treatment and diagnosis of acute pancreatitis and alcoholism or alcohol abuse are within the purview of the internal medical specialty. Both Resnick and the defendant specialize in internal medicine. The court accepted Resnick's qualifications as an expert in internal medicine and allowed him to testify about the standard of care owed to the plaintiff and about the breach by the defendant of that standard in thirteen discrete ways. The plaintiff then attempted to elicit from Resnick his opinion concerning the proximate cause of the plaintiff's injuries.[6] The defendant objected to the question

---

[6] The colloquy with respect to the question as to proximate cause on direct examination is as follows:

"[Plaintiff's Counsel]: Doctor, based upon the examination which you did and your review of the files, [the plaintiff's] chart and the records from Norwalk Hospital as well as the depositions of [the defendant] and of [the plaintiff], do you have an opinion based upon reasonable medical probability as to the cause of the [plaintiff's] injury?

"[Witness]: Yes.

"[Plaintiff's Counsel]: Okay; what is your opinion doctor?

"[Witness]: I believe that the injury to which you refer, I assume the hospital injury, was clearly an instance of alcoholic hepatitis—excuse me, alcoholic pancreatitis in association with, which there was some alcoholic hepatitis as well and also clearly evidence of alcohol abuse at that point in time.

on several grounds, namely, that it was a leading question, that its form was improper and that it lacked a foundation. The court sustained the objection as to the lack of a foundation.

The plaintiff then attempted to establish a foundation and asked Resnick to identify the standard of care. Resnick did so and then also testified about, in his opinion, the defendant's thirteen deviations from that standard. After lengthy testimony about those areas, the plaintiff again asked Resnick's opinion regarding the proximate cause of the plaintiff's injuries.[7] The defendant again objected to the question on the grounds that the witness was not competent to offer an opinion, that the question lacked a proper foundation[8] and that it was not in proper form. The court sustained the objection on the grounds that there was an insufficient foundation for an opinion as to proximate cause and that the court had insufficient information to conclude that Resnick was competent to offer an opinion as to the proximate cause of the plaintiff's injuries.

In an attempt to cure the competency issue, the plaintiff then made an offer of proof and examined Resnick outside the presence of the jury regarding his professional background. Following the offer of proof, the court stated that it saw "no reason to change its ruling. The objection is sustained on the remaining grounds except as to form."

"[Plaintiff's Counsel]: Now, is it reasonably probable that [the plaintiff's] injuries occurred as a result of the failure to detect alcoholism and acute pancreatitis?

"[Defense Counsel]: Objection."

[7] The plaintiff's counsel asked the following question: "Now, doctor, do you have an opinion with any reasonable degree of medical certainty as to whether these thirteen departures which you just mentioned from the standard of care were a substantial factor in causing the plaintiff's injuries?"

[8] The defense counsel originally stated that he objected to the question based on speculation, but he then couched the objection in terms of lack of foundation.

The court stated that the issue was not whether the expert could testify competently that alcoholism is a producing cause of acute pancreatitis, but whether the expert could testify that the defendant's breach of the standard of care owed to the plaintiff resulted in a lost opportunity for the plaintiff to cease his consumption of alcohol. The court correctly analyzed the breach of the standard of care in this case as being a failure to diagnose the plaintiff as suffering from alcoholism because the defendant allegedly failed to order appropriate blood tests and failed to ask the plaintiff about his alcohol consumption or his family's consumption, and as being a failure of treatment because the defendant did not refer the plaintiff to appropriate physicians, persons or agencies.

Neither party disputes that the jury was entitled to hear Resnick's testimony concerning the plaintiff's injuries, damages, the standard of care owed by the defendant to the plaintiff, and the defendant's breaches of that standard. The question is whether the court should have allowed the plaintiff to elicit Resnick's opinion regarding proximate cause or, if not, whether the plaintiff was entitled to have the jury decide if proximate cause existed on the basis of other evidence, even without any expert testimony.

All medical malpractice claims, whether involving acts or inactions of a defendant physician, require that a defendant physician's conduct proximately cause the plaintiff's injuries. The question is whether the conduct of the defendant was a substantial factor in causing the plaintiff's injury. "Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 745–46, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995).

## A

We first discuss whether the opinion asked of Resnick as to proximate cause had a foundation. The question of foundation for an expert's opinion has recently been explored by the United States Supreme Court in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). In *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), Connecticut adopted the *Daubert* rationale. *Daubert* interprets rule 702 of the Federal Rules of Evidence.[9] In this case, we also consider §§ 7-2[10] and 7-4[11] of the Connecticut Code of Evidence, General Statutes § 52-184c (c)[12] and

[9] Rule 702 of the Federal Rules of Evidence provides in relevant part: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise . . . ."

[10] Connecticut Code of Evidence § 7-2 is virtually identical to rule 702 of the Federal Rules of Evidence and provides as follows: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

[11] Section 7-4 of the Connecticut Code of Evidence provides in relevant part: "(a) . . . An expert may testify in the form of an opinion and give reasons therefor, provided sufficient facts are shown as the foundation for the expert's opinion.

"(b) . . . The facts in the particular case upon which an expert bases an opinion may be those perceived by or made known to the expert at or before the proceeding. The facts need not be admissible in evidence if of a type customarily relied on by experts in the particular field in forming opinions on the subject. The facts relied on pursuant to this subsection are not substantive evidence, unless otherwise admissible as such evidence."

[12] General Statutes § 52-184c (c) provides: "If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not

(d),[13] and *George* v. *Ericson*, 250 Conn. 312, 736 A.2d 889 (1999) (en banc), to determine whether the court properly precluded Resnick from giving his opinion as to proximate cause.

*Daubert* held that the standard for admitting expert scientific testimony in a federal trial does not necessarily include general acceptance by the scientific community of the particular opinion. *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, supra, 509 U.S. 590. That case interprets rule 702 of the Federal Rules of Evidence as allowing the introduction of such expert testimony as long as the trial court has ensured that the opinion of the expert is relevant and reliable. Id., 589. *Daubert*, thus, relied on the concept of a "gatekeeper" function for a trial court. In *Porter*, our Supreme Court adopted the principles of *Daubert*; *State* v. *Porter*, supra, 241 Conn. 68; as does § 7-2 of the Connecticut Code of Evidence. Whether to admit such testimony is within the court's discretion. *General Electric Co.* v. *Joiner*, 522 U.S. 136, 139, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). *Kumho* enlarged the scope of *Daubert* to determine that rule 702 of the Federal Rules of Evidence applied not only to scientific testimony, but to other areas of expertise, including technical and other specialized knowledge.[14] *Kumho Tire Co., Ltd.* v. *Carmichael*, supra, 526 U.S. 147.

In the present case, the court, after noting that *Daubert*'s rationale is not limited to scientific testimony,

within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'."

[13] General Statutes § 52-184c (d) provides in relevant part: "Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section . . . ."

[14] The present case is not one in which a trial court is asked to act as the oft-described "gatekeeper" to determine whether an expert may opine as to an unsettled or controversial matter based on legitimate scientific methodology that is relevant and reliable.

determined that the court had a gatekeeper function.[15] The question seeking to elicit Resnick's opinion as to the cause of the plaintiff's injury on the basis of reasonable medical probability rested on his examination of the plaintiff, his review of the plaintiff's files, the defendant's chart and the records from Norwalk Hospital, and the depositions of the defendant and the plaintiff. The court concluded that Resnick's opinion lacked a foundation as to proximate cause.[16]

Section 7-4 of the Connecticut Code of Evidence allows an expert to offer an opinion and his reasons

[15] The court stated in relevant part: "So, the full range of my gatekeeper function allows me to entertain the question concerning Dr. Resnick's ability to testify as to proximate cause. Under the statute [§ 52-184c (c) and (d)], Dr. Resnick is a similar health care provider. He is board certified in internal medicine, and, therefore, is competent to testify as to the standard of care applicable to the treatment and claims of nontreatment or nonreferral by [the defendant]. He is equally competent to testify concerning the violations of those standards of care and has itemized thirteen of them. . . .

"But, the question is whether or not under the circumstances and the testimony and the facts of this case he is competent to testify as to the element of proximate cause, which is a different issue entirely. . . .

"The court believes that there is insufficient foundation to take this issue beyond the area of speculation. The court believes that there are insufficient facts that have been adduced in this case and in the question for that question to be asked. And, therefore, the court is going to sustain the dual objection as to speculation, which has been recouched in the language of foundation.

"Furthermore, the court believes under its gatekeeper function and under the general rules of evidence, that the court is equally going to sustain the objection as to the competency of Dr. Resnick to opine as to proximate cause, there being insufficient information in the record for me to make such a determination."

[16] The court stated: "The fact that depositions were offered has nothing to do with anything because that is not evidence in this case. [The plaintiff's] deposition is not evidence in this case. [The defendant's] deposition is not evidence in this case. What is evidence in this case is what went before the jury, which was the live testimony. [Resnick] was not here during the live testimony. He has indicated that he reviewed it. Normally you would not do so, but you have to establish the foundation of that before you go through it.

"I am going to sustain the objection, and you are going to wind up having virtually every other question in this regard sustained by me unless there is appropriate foundation being installed in evidence in this case.

for that opinion provided sufficient facts are shown as the foundation for the expert's opinion. See footnote 10. General Statutes § 52-184c (c) and (d) allow a health care provider trained and experienced in a medical specialty similar to that of the defendant health care provider to testify in a medical malpractice case. See footnotes 12 and 13. The court concluded that Resnick's specialty was similar to the defendant's specialty and that Resnick was a similar health care provider.

In *George*, our Supreme Court established that a non-treating physician's opinion may be admissible even if it is based on what would otherwise be inadmissible hearsay as long as the opinion is based on trustworthy information and the expert has had sufficient experience to evaluate it, including tests, medical records, statements by a party, laboratory reports and X rays. *George* v. *Ericson*, supra, 250 Conn. 321–24. The sources of information are not limited and include "many types of information." Id., 323. It is not uncommon for an expert to rely on the depositions of the parties. *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 718, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). The sources that Resnick had reviewed, upon which the question in this case rested, could form a reliable basis for an expert opinion. Those sources were the plaintiff's files, charts and records from the hospital, as well as the depositions of the plaintiff and the defendant. Nothing in *George* indicates that the expert may rely only on in-court live testimony.

In this case, we conclude that Resnick could evaluate the information available on the basis of his experience and was competent to do so. Resnick is a board certified internist and had specific experience relating to diagnosing and treating alcoholic pancreatitis at various

"That's my ruling. I have sustained the objection on the basis of foundation. Yes, it is leading, too. I am not concerned so much about that."

hospitals. He had treated a significant number of patients who had pancreatic disease attributable to alcoholism and, at the time of trial, taught at Harvard Medical School and had been elected to the American College of Physicians. The defendant himself testified that physicians who specialize in internal medicine are trained to diagnose alcoholism as a disease as well as its impact on other diseases.

In this case, to ward off a directed verdict on the ground that proximate cause was lacking, the plaintiff needed to present some evidence from which a jury reasonably and legally could conclude that it was more probable than not that the plaintiff was an alcoholic; that alcoholism can cause acute pancreatitis; that the plaintiff had acute pancreatitis; that alcohol caused the plaintiff's acute pancreatitis; that the plaintiff would have stopped drinking if so advised by the defendant and that if the plaintiff had stopped drinking, the plaintiff would not have suffered acute pancreatitis.

Resnick was sufficiently qualified to express an opinion on the basis of all the data available to him, including the plaintiff's statements to him, as to whether it was more probable than not that an alcoholic such as the plaintiff would stop drinking if informed of the consequences if he did not. He was also competent to express an opinion that if the plaintiff had stopped drinking, it was more probable than not that he would not have suffered from acute pancreatitis. We conclude that Resnick was competent to testify as to the proximate cause of the plaintiff's injury, that there was a foundation for him to do so and that it was harmful to the plaintiff to exclude the testimony. See *Borkowski* v. *Sacheti*, 43 Conn. App. 294, 315, 682 A.2d 1095, cert. denied, 239 Conn. 945, 686 A.2d 120 (1996).

B

The court not only precluded Resnick from testifying concerning proximate cause, but also concluded that

expert testimony was necessary for proof of proximate cause. The court characterized the medical malpractice claim as a "lost chance" or a "loss of chance" claim and extensively reviewed various Connecticut cases to determine if it fell within any of the exceptions in such cases that would obviate the plaintiff's need to prove proximate cause by expert testimony.

We agree with the court that the plaintiff's complaint reasonably can be read as stating a cause of action for a lost chance because it alleges the defendant's failure to diagnose promptly or to refer the plaintiff to a specialist in treating alcoholics, or to warn the plaintiff of the necessity of not drinking alcoholic beverages.[17] All of the plaintiff's allegations relate to acts of omission rather than commission, and relate to the harm caused by the inaction of the defendant in that the plaintiff lost an opportunity to be treated more promptly for alcoholism and lost an opportunity to cease drinking, which led to the resultant complication, acute pancreatitis.

Connecticut recognizes a cause of action for lost chance. A plaintiff must prove his entitlement to recover in a medical malpractice case based upon lost chance by providing evidence that would lead a jury to the reasonable conclusion that, more probably than not, the defendant's negligence was the direct and proximate cause of a decrease in the chance of successful treatment of the plaintiff's injury. Id., 310; *LaBieniec* v. *Baker*, 11 Conn. App. 199, 207, 526 A.2d 1341 (1987); see also *Law* v. *Camp*, 116 F. Sup. 2d 295, 305 (D. Conn. 2000). In Connecticut, such cases follow a traditional approach in the determination of proximate cause.[18]

---

[17] The interpretation of pleadings is a question of law and requires an interpretation by the court. See *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 264, 684 A.2d 693 (1996). The plaintiff did not use the words "lost chance" or "loss of a chance" in his complaint.

[18] *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 302–307, discusses three possible routes in effectuating the lost chance doctrine, the relaxed causation

*Borkowski* v. *Sacheti*, supra, 43 Conn. App. 311; see also *Wallace* v. *St. Francis Hospital & Medical Center*, supra, 44 Conn. App. 262; *LaBieniec* v. *Baker*, supra, 207; *Law* v. *Camp*, supra, 305.

There are a number of Connecticut cases that are lost chance cases, and in at least two of them the court allowed an expert to testify as to proximate cause. *Grody* v. *Tulin*, 170 Conn. 443, 365 A.2d 1076 (1976), is a wrongful death action, in which the plaintiff alleged a failure to diagnose a fatal spinal cancer. A directed verdict for the defendants was appropriate in that case because the expert witness testified that it was *not* reasonably probable that the plaintiff's life would have been prolonged if she had had the proper tests to diagnose the cancer earlier. Id., 450 & n.3. Without such testimony, the jury could not speculate as to whether an earlier diagnosis and treatment might have prolonged the decedent's life. Id., 450–51. To prevent a directed verdict, the plaintiff had to show more than that earlier treatment *might* have been beneficial. It is noteworthy that in *Grody*, the court allowed a plaintiff's expert to testify as to the proximate cause of the plaintiff's injuries. Id., 449–50.

In *LaBieniec*, the complaint alleged a failure to detect lung cancer in X rays, which led to a spread of the cancer and a metastasizing to the plaintiff's brain. The plaintiff claimed that the delay in learning of the cancer caused him emotional distress and a decreased chance of survival. This court noted that if a delay in a definitive diagnosis proximately harmed a plaintiff, a physician could be held liable, but that, although there was malpractice, i.e., negligence, in the misreading of the X rays, the malpractice was not shown to be the proximate cause of the injury. *LaBieniec* v. *Baker*, supra, 11

approach, the proportional approach and the traditional approach, and concludes that Connecticut follows the traditional approach.

Conn. App. 207. The plaintiff did not show that he was in fact deprived of a chance for successful treatment and did not show that the decreased chance for successful treatment more probably than not resulted from the defendant's negligence. Id., 207–208. In *LaBieniec*, the court allowed an expert witness to testify as to proximate cause, but that testimony did not establish a causal connection between the negligence of the defendant and the plaintiff's injury. Id., 207.

In *Borkowski*, the trial court refused to charge the jury on the lost chance count of the plaintiff's complaint because it determined that such a cause of action did not exist in Connecticut. *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 296. Because the jury was not allowed to determine the issue, which was tantamount to a directed verdict for the defendant, this court ordered a new trial. Id., 315. In that case, the court allowed the defendant to admit evidence to show that the plaintiff's decedent was a noncompliant patient who did not attend to his own medical needs and caused his own death. Id.

In the present case, the defendant's special defense was that the plaintiff failed to follow the defendant's advice and instructions, and that any injuries were caused by the plaintiff himself and not by the defendant. There was some evidence admitted at trial to show that the defendant had given the plaintiff some advice to stop drinking and that the plaintiff had failed to follow that advice. Even without an allegation of contributory negligence, such evidence was proper. See id., 325.

In *Wallace*, another lost chance case, the rapid death of the plaintiff's decedent in the defendant's emergency room was held not to be causally related to the failure of the hospital to perform surgery where the decedent died from a massive recent intraperitoneal hemorrhage, which bleeding was unexplained. On the basis of the

defendant's objection as to competence, the court precluded an expert witness from testifying as to proximate cause because he was not a surgeon and, therefore, was not qualified to render an opinion as to a surgical outcome had surgery been performed. *Wallace* v. *St. Francis Hospital & Medical Center*, supra, 44 Conn. App. 260. This court determined that the trial court had properly precluded the testimony.

There are three exceptions to the necessity of obtaining expert testimony to prove a plaintiff's case in a medical malpractice action. Those exceptions are when the negligence is gross, when the medical condition is obvious and when the plaintiff's evidence of injury creates a probability so strong that a lay juror can form a reasonable belief. *Shegog* v. *Zabrecky*, supra, 36 Conn. App. 746–47. The court in this case concluded that none of the three exceptions for expert opinion cases obviated the necessity for an expert opinion. The court was correct in that conclusion.

Other cases discuss the exceptions as identified in *Shegog* that make it unnecessary to provide expert testimony to prove proximate cause or negligence; see *Puro* v. *Henry*, 188 Conn. 301, 308, 449 A.2d 176 (1982); *Bourquin* v. *B. Braun Melsungen*, 40 Conn. App. 302, 314–17, 670 A.2d 1322, cert. denied, 237 Conn. 909, 675 A.2d 456 (1996); to prove medical damages for future pain and suffering; see *Boland* v. *Vanderbilt*, 140 Conn. 520, 523, 102 A.2d 362 (1953); *Parker* v. *Supermarkets General Corp.*, 36 Conn. App. 647, 650–51, 652 A.2d 1047 (1995); or to establish permanency of an injury; see *Trani* v. *Anchor Hocking Glass Corp.*, 142 Conn. 541, 544, 116 A.2d 167 (1955); *Royston* v. *Factor*, 1 Conn. App. 576, 577, 474 A.2d 108, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984).

*Puro* concludes that negligence in malpractice cases ordinarily requires expert testimony unless the facts

show such a gross lack of care that warrants an almost conclusive inference of negligence. *Puro* v. *Henry*, supra, 188 Conn. 305. Circumstantial evidence was sufficient in *Puro* to conclude that the defendants left a needle in the plaintiff's abdominal wall during surgery, and that the needle caused the plaintiff pain and suffering that necessitated further surgery. Id., 308. Thus, both negligence *and* proximate cause can be inferred without expert testimony if the facts show a gross lack of care. The facts of the present case do not allow a conclusion of gross lack of care.

The second exception to the necessity for expert testimony occurs in the situation in which the medical condition is obvious. The plaintiff testified that until September, 1992, when he was admitted to the hospital, he did not know that he had a problem with alcohol. The plaintiff testified that he did not exhibit any of the classic symptoms of alcoholism, such as loss of jobs, arrests or inability to refrain from drinking during the day. On the basis of those facts, the medical condition of alcoholism was not obvious and, therefore, the plaintiff does not fall within the exception to the requirement of expert testimony.

The third exception to a need for expert testimony in lost chance cases revolves around whether lay jurors can resolve the issue by use of their common knowledge. If the fact finders can answer the question at issue without expert opinion because it is within their common experience and need not be resolved by the use of peculiar or specialized knowledge, no expert testimony is required. Id., 309. *Bourquin* establishes that negligence in a medical malpractice case may consist of a failure to investigate the source of human tissue material used in an operation when the box in which it was contained had warnings on it and that expert testimony is not necessary to show that negligence. *Bourquin* v. *B. Braun Melsungen*, supra, 40 Conn. App.

316. That is so because the warnings do not present a uniquely medical issue. Similarly, the requisite causal relationship between the hospital's alleged negligence and the decedent's death in that case needed no expert testimony other than the cause of death. Id., 317. A failure to heed the warnings on the box could allow a jury to conclude that the failure was the proximate cause of the injury.

The defendant's file on the plaintiff indicates that the plaintiff told the defendant in 1986 that he drank six beers per day, that the defendant's plan for the plaintiff was that he discontinue alcohol for two weeks before repeating a liver function test, and that in June, 1991, the plan was to reduce alcohol and beer consumption. The plaintiff's testimony implies that the defendant did not tell him about the consequences of drinking. There was also evidence that the plaintiff said he would try to stop drinking on his own and that he did not accept a referral to a rehabilitation program after he was discharged from the hospital.

The plaintiff could testify as to whether he would have followed the defendant's advice, if given, to stop drinking, and the jury, without expert opinion, could decide, on the basis of the plaintiff's credibility, whether that was so. It was not within the jury's common knowledge, however, to determine whether, if the plaintiff had ceased drinking, acute pancreatitis would not have resulted. For that aspect of proximate cause, an expert opinion was necessary. The plaintiff therefore fails to come within the third exception to the requirement of expert testimony.

The plaintiff should have had an opportunity to allow a jury to decide, on the basis of the offered expert opinion if, more probably than not, a causal connection existed between the failure of the defendant to diagnose the plaintiff's alcoholism and the plaintiff's contraction

of acute pancreatitis. A new trial is necessary. See *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 315.

The judgment as to count two is affirmed; the judgment as to count one is reversed and the case is remanded for a new trial as to count one.

In this opinion the other judges concurred.