[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
A. BACKGROUND
In this medical malpractice action there are two plaintiffs, Brian Mead, age 34, and his wife, Karen Mead, age 32. The defendant, Peter Wilson, is a board certified surgeon, duly licensed in Connecticut, who CT Page 13158 practices in New Milford, Connecticut, and was so doing in January, 1999. Brian Mead's claim, boiled down to its essence, is that in the course of a hernia operation, the defendant violated the prevailing standard of care by failing to identify and protect certain nerves, thereby causing various injuries, pain and suffering, permanent injury and economic losses. Karen Mead's claim is a loss of consortium.
The defendant denies that he violated the applicable standard of care and leaves the plaintiffs to their proof as to damages. The defendant's motion for Judgment of Dismissal for failure to make out a prima facie case is denied.
B. LAW REGARDING MEDICAL MALPRACTICE
To recover for medical malpractice the plaintiffs must prove the following by a fair preponderance of the evidence:
1. At the time of the defendant's alleged negligence he was a physician caring for or providing treatment to Brian Mead in the course of a physician patient relationship. The plaintiffs have proved this first element and the defendant does not contest it.
2. While rendering such care and treatment, the defendant violated his professional duty to his patient by failing to exercise that level of care, skill and treatment, which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers, as of February 5, 1999.
See Conn. General Statutes 52-184c (a).
3. The defendant's failure to meet the prevailing standard of care in the treatment of Brian Mead was a legal cause of the plaintiffs' losses.
To prove element 2 above, the plaintiffs must establish by the testimony of a competent medical expert, what the prevailing standard of care was at the time of the alleged malpractice, and that the defendant's surgical care and treatment failed to meet that standard in at least one of the alleged ways.
To prove element 3 above, the plaintiffs must prove as follows:
 All medical malpractice claims, whether involving acts or inactions of a defendant physician, require that a defendant physician's conduct proximately cause the plaintiffs injuries. The question is whether the conduct of the defendant was a substantial CT Page 13159 factor in causing the plaintiffs injury. "Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." Shegog v. Zabrecky, 36 Conn. App. 737, 745-46, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995).
Poulin v. Yasner, 64 Conn. App. 730, 738 (2001).
C. FINDINGS OF THE COURT ON LIABILITY
The court finds that the defendant deviated from the appropriate standard of care.
The court finds that the better evidence, the weightier evidence, the more persuasive and credible evidence, as presented by Dr. Joseph Dineen, the plaintiffs' expert witness, a board certified surgeon, was that Dr. Wilson deviated from the appropriate standard of care. The deviation was that during the open repair of Brian Mead's left side hernia, there was an entrapping of the ilioinguinal nerve, because the nerve was not adequately protected during the surgical process. The defendant's failure to protect the nerve was a violation of the standard of care. The defendant himself testified that the standard of care requires protection of the nerves. The court rejects the defendant's claim that the nerve became entrapped in fibrotic tissue as the natural result of surgery and the ensuing healing process.
The court further finds that the defendant's failure to meet the prevailing standard of care was a legal cause of the plaintiffs losses. The court finds credible Dr. Dineen's testimony that the basis of Brian Mead's symptoms since the surgery of February 1999 is the nerve entrapment caused by the defendant's departure from the standard of care.
D. DAMAGES
1. Damages As To Brian Mead
The rule as to damages is that the plaintiffs should receive fair, just and reasonable compensation for their injuries. The court must disregard any suffering that is a result of something other than the defendant's malpractice, and may not speculate or guess as to damages. The plaintiffs must prove their damages by a fair preponderance of the evidence. The plaintiffs are also entitled to fair and just compensation for whatever CT Page 13160 permanent injuries they have proved are reasonably probable.
The court finds substantial exaggeration component in Brian Mead's testimony on injuries and damages and further finds that not all of his problems can be laid on Dr. Wilson's doorstep; for example, his thoughts of suicide, some of the marital problems experienced by the plaintiffs, the effect on his self image, his drug addiction, the impact on his job and his relationship to God, and his inability to enjoy life as before. The court also finds that his lost wage claim is inflated.
The court believes that Brian sustained a real injury with resultant pain and suffering and some degree of permanency, but its assessment of what constitutes fair, just and reasonable compensation differs markedly from the amount requested by his attorney.
a. Economic Damages
Economic damages are expenses incurred for medical, hospital, x-ray bills and the like, as well as loss of earnings to the extent the Court finds them reasonable and legally caused by the defendant's malpractice.
The court awards Brian Mead $25,000.00 economic damages.
b. Non Economic Damages
Non economic damages comprise pain, suffering, numbness and the inability to carry on life's activities as before, that is, losses that are not specific amounts or liquidated or measured by bills or invoices. They include mental and emotional pain and anguish, and disruption of prior sexual activity.
The court awards Brian Mead $60,000.00 non economic damages; the total amount awarded to him is $85,000.00
2. Damages As To Karen Mead
Karen Mead claims damages for loss of consortium. The same rules of damages discussed in D, supra (Damages As To Brian Mead) are applicable to Karen Mead.
Since a claim for loss of consortium is derivative in nature, and the court has already found liability on the underlying malpractice claim, the issue of damages must be decided.
"Loss of consortium is defined as the loss of services, financial support, and the variety of intangible CT Page 13161 relations that exist between spouses living together in marriage. . . . The "intangible' components of consortium are the "constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage." (Citation omitted.)Shegog v. Zabrecky, 36 Conn. App. 737, 751, 654 A.2d 771, cert. denied, 232 Conn. 922, 656, ___ A.2d 670 (1995). "By such services is meant not so much eared wages as assistance and helpfulness in the relations of conjugal life according to the station of the parties. In addition, there is exclusive right in each to the society, companionship and conjugal affection of the other. To damages for the loss of these rights may be added recovery for mental anguish and injured feelings."Keyes v. Churchward, 135 Conn. 115, 118, 61 A.2d 668
(1948). "Damages awarded for loss of consortium include future as well as past suffering, and are measured by the extent of the loss incurred, to the extent that money can measure it. . . .
Musorofiti v. Vlcek, 65 Conn. App. 365, 372 (2001).
Loss of consortium is incapable of precise measurement, and the court is heavily reliant on the credibility of Karen Mead's testimony. Just as in Brian Mead's claim for damages, the court finds that Karen Mead's claims are exaggerated, and that some of them are not related to anything Dr. Wilson did or did not do.
The court awards Karen Mead $10,000.00.
Walsh, J.